# BIRDSONG *vs.* THE STATE.

### [INDICTMENT FOR MURDER.]

1. *Venue, application for change of; not discretionary.*—An application for change of *venue*, in this State, no longer rests in the discretion of the court. If denied in a proper case, it is an error for which, after conviction, the judgment will be reversed on appeal; or, before trial, the defendant may obtain the benefit of his application by *mandamus.*

2. *Same; counter affidavits, what insufficient to defeat.*—A counter affidavit that does not deny the truth of the defendant's affidavit, but only that affiant does not believe there is any such prejudice or excitement in the public mind of the county against defendant as would deny him a fair and impartial trial, is not sufficient to defeat the application.

3. *Venire; what no ground to quash.*—The *venire*, or list of jurors summoned in a capital case, will not be set aside or quashed because one of the persons so summoned was a member of the grand jury which found the indictment, and was present when the witnesses were examined by the grand jury, and when the indictment was returned into court a true bill.

4. *Challenge for cause; what good ground for.*—It is a good ground for challenge for cause to a juror put upon the defendant, that he was one of the grand jury by whom the indictment was found, and if the challenge is disallowed and the defendant excepts, and then challenges him peremptorily, the defendant is entitled to the benefit of his exception, although his peremptory challenges be not exhausted before the jury is completed.

5. *Murder, trial of; what irrelevant evidence on.*—On a trial for murder, it is improper for the State to prove that defendant, on the day the killing took place, proposed to deceased that they should go and rob a negro man who was supposed to have money. Such evidence is not a part of the *res gestæ*, and might create an improper prejudice against the defendant.

6. *Witness; what proper question to ask of.*—On the cross examination of a witness for the State, defendant may ask a question that may enable him to show that an apparent inconsistency between confessions proved and the evidence of said witness could be reconciled, and both be true.

7. *Declarations of defendant; when can not be proved in his own behalf.* A defendant should not be permitted to prove his acts or declarations, in his own behalf, unless they constitute a part of acts or declarations proved by the State, or properly form a part of the *res gestæ* of the main fact under consideration, and were contemporaneous with it.

Birdsong v. The State.

APPEAL from Circuit Court of Limestone.
Tried before Hon. JAMES S. CLARK.

The appellant, Birdsong, was indicted and tried for the murder of Eli McKee, found guilty of murder in the second degree, and sentenced to the penitentiary for ten years. On the trial, which took place on November 1st, 1871, the defendant filed a sworn application for a change of *venue*, setting forth specifically the reasons why he could not have a fair and impartial trial, to-wit: "That he had been published and posted in the newspapers of the county as a horse thief and murderer, and that in consequence thereof there is great excitement and prejudice in the minds of the people against affiant." Attached to the application were copies of the publications referred to, which were dated respectively August 23d and 25th, 1871. The publication in the *Athens Post* was headed, "Horse Thief Killed," and after reciting the finding of McKee's body, and that he belonged to a gang of horse thieves who had been committing extensive depredations through that part of the State, concludes as follows: "He was shot by a man named Birdsong, who belonged to the same gang, and whose purpose was ostensibly robbery, as the pockets of McKee were turned wrong side out. * * * There is no doubt a regular band of horse thieves exists among us. The people are becoming aroused, and will bring them to justice wherever found."

The *Limestone News*, after stating that McKee was killed by a man named Birdsong, states: "McKee, Birdsong, and a young Tennesseean named Knight, had been plying the trade of horse-stealing. Knight separated from the other two for a short time, when for some unknown purpose Birdsong shot McKee twice in the breast. Knight, who was captured by some citizens, confessed that himself, McKee and Birdsong were banded together for stealing horses."

In opposition to the application, the State introduced the counter affidavit of several citizens, as follows: "We, whose names are hereto subscribed, swear that we have

heard of the offense charged to have been committed by James R. Birdsong, which is now pending in the circuit court; that we do not believe there is any such prejudice or excitement in the public mind of this county against said Birdsong as would deny him a fair and impartial trial. We have never heard or read in any published newspaper of this county that James R. Birdsong was published as a horse thief or murderer." This was all the evidence adduced, and thereupon the court overruled the application, and defendant excepted.

The defendant then moved to quash and set aside the *venire* from which the jurors were to be drawn for his trial, on the ground that George W. Tanner, one of the grand jurors, who had been sworn and was then acting with the grand jury then in session, was on said *venire*, and had heard the evidence and passed upon the same as a grand juror in finding and returning into court the indictment against the defendant at the present term. The court overruled this motion, and defendant excepted. After this, the name of said Tanner was drawn, and he was put upon the defendant for acceptance or challenge, and defendant challenged said juror for cause, stating the same grounds as those in support of the motion to quash the *venire*. The challenge for cause was overruled and the juror put on defendant, who excepted and peremptorily challenged Tanner. When the jury was completed, Birdsong had several peremptory challenges.

The bill of exceptions states that "after the State proved by the confessions of defendant that defendant had said deceased had tried to get defendant to join him in stealing, and that defendant refused to do so, the State offered a witness to prove that defendant, on the day of said killing, proposed to deceased to go and rob a negro man who was supposed to have money. The defendant objected to this evidence and to the witness being questioned thereon, but the court overruled the objection, and allowed the evidence of the witness to go to the jury, and defendant excepted."

The bill of exceptions further recites "that the State having proved, as part of the confessions of defendant, that he had taken the saddle-bags and some other articles

belonging to deceased at the time of the killing, the solicitor introduced one Hays, the coroner of the county, who testified that he took a watch and several other articles belonging to deceased from the person of the deceased, and that the saddle-bags and other articles were delivered to witness, as coroner, on the morning after the killing, while he and the jury were holding an inquest over the body of the deceased, &c. Defendant, on cross examination of the coroner, asked him from whom he received the saddle-bags, &c., which he stated were delivered to him at the time of holding the inquest. The court refused to permit the witness to answer, and defendant duly excepted."

After this, "the State having proved by the confessions of defendant that deceased had made one or two efforts to kill defendant, within a few days previous to the killing, in one of which he made a "cavalry charge" on defendant with a cocked pistol leveled at him, defendant offered Lou Hern as a witness, and proposed to prove in substance by him that on the evening of the killing, witness and defendant walked together for a mile on the road towards defendant's home; that during the time they saw a man on horseback nearly a half a mile behind, and coming towards them in a fast trot; that defendant remarked to witness that deceased had made threats against defendant, and tried to kill him that evening, and was then pursuing him to take his life; that defendant said he was trying to keep out of his way, and that his manner indicated fear and alarm. Witness knew deceased, but the deceased was too far off for witness to recognize the horseman; that about this time witness and defendant separated, and soon after this he saw the horseman go at a fast trot up the road in the direction in which the defendant had gone." The court refused to allow this proof to be made, or to allow the same to go to the jury, and defendant duly excepted.

The defendant then offered to prove by John and Mary Kimbrough that they lived with defendant, and two miles from where McKee was killed; that immediately after the killing defendant rode home, told them what he had done, directed them what to do with the property of McKee, and

to report to the sheriff that he would go away until the excitement was over, (as he feared a mob of McKee's friends,) and then surrender himself. The court refused to allow this proof to be made, and defendant duly excepted.

The rulings of the court to which exceptions were reserved are now assigned as error.

HOUSTON & PRYOR, for appellant.—1. The application for a change of *venue* tendered to the State an issue of fact. It is attempted to be met by an issue of belief. The counter affidavits deny nothing, but merely state the *belief* of affiants that prejudice does not exist. The fact that affiants had never heard of the publications, is no answer whatever to the allegation that they were made as stated in defendant's affidavit.

2. The evidence that defendant tried to get deceased to join him in robbing a negro just before the killing, being in no way connected with the killing, was illegal evidence. It was introduced solely to prejudice the prisoner. There is no pretence that it was part of the *res gestœ*.

3. The evidence offered by the witness, Lou Hern, and the Kimbroughs, tended to throw some light on the prisoner's situation and surroundings at the time of the killing. The jury, in forming a verdict, were bound to pass upon these things. There being no direct evidence, the evidence offered was the best attainable. It showed that defendant had reasonable cause to fear great bodily harm from the deceased, and tended to show that the accused had not sought the meeting in which deceased was killed. It tended to rebut any presumption of malice on account of the past ill feeling existing between the parties. It should not have been excluded.

4. Where one of the petit jurors summoned to try an indictment was on the grand jury that found the bill,— held, that the defendant might challenge him.—*Barlow v. State*, 2 Blackf. (Ind.) 114; U. S. Dig. Cr. Law, 489, § 395; *O'Driscoll v. State*, 2 Bays, (S. C.) 153, two cases.

5. Persons belonging to the grand jury list, as selected

by the officers of the county, are not disqualified or excused from serving on juries to try persons charged with offenses against the laws, provided they are not sworn on the grand jury for the term of the court at which the trial takes place, and have other statutory qualifications.—*Rafe v. State*, 20 Ga. 60.

J. W. A. SANFORD, Attorney-General, *contra.*—The affidavits contradicting the statements of the prisoner were made according to the opinion in *Ex parte Chase*, 43 Ala., and upon the affidavits the application for a change of *venue* was properly refused.

The motion to quash the *venire* because there may have been an objectionable person on it, was rightly overruled. The right to challenge is given for the purpose of excluding incompetent, or corrupt, or prejudiced, or partial persons from the jury.—See Rev. Code, §§ 4178–80; *Barlow v. State*, 2 Blackf. 114.

If the court erred in ruling that a person who acted as a grand juror in finding the indictment could not be challenged for cause when summoned as a petit juror to try the accused on it, the error caused no injury to the defendant, because the person was excluded the jury by a peremptory challenge.—*State v. Brantly*, 27 Ala. 44.

As the jury was authorized to believe a part of the prisoner's confession, and to disbelieve a part, there was no error in permitting it to be contradicted.—Roscoe Cr. Ev. p. 51.

The exclusion of the testimony of Hern and Kimbrough was proper. The prisoner's declarations, either before or after the commission of the crime, when introduced to exculpate him, and forming no part of the *res gestœ*, are inadmissible.—*Taylor v. State*, 42 Ala. 529; *Maynard v. State*, 46 Ala. 85; *Oliver v. State*, 17 Ala. 587; *Carroll v. State*, 23 Ala. 37.

PECK, C. J.—An application for a change of venue, in a criminal case in this State, no longer rests in the discretion of the court. If denied on a proper application, it is

treated as an error, for which, after conviction, the judgment will be reversed on appeal, or, before trial, the defendant may obtain the benefit of such an application by *mandamus—Ex parte Chase*, 43 Ala. 303; *Murphy & Ashford v. The State*, at January term, 1871.

The application of the defendant in this case was made in proper time, and his affidavit, upon which it was made, contains all that the statute requires on such an application. It states that he could not have a fair and impartial trial for the offense with which he was charged in the county in which the indictment was found, for the reason that he had been published and posted in the newspapers of said county as a murderer and horse-thief, and that there was great excitement and prejudice in the minds of the people of said county against him in consequence thereof.

Copies of the publications referred to are made parts of said application, and it seems to us they might well have produced the excitement and prejudice complained of.

The opposing affidavit of the several persons, offered by the State, does not deny the existence of the alleged excitement and prejudice against the defendant, or that the said publications were not made, but only that affiants had never heard of, or read in any public newspapers of said county, that said defendant had been published as a murderer or horse-thief; and that they did not believe there was any such prejudice or excitement against him as would deny him a fair and impartial trial. Admitting the truth of said affidavit, it does not prove that said publications were not made, but only that said affiants had not heard of or read them; neither does it disprove that great excitement and prejudice existed against the defendant, but only that they did not believe there was any such prejudice or excitement as would deny him a fair and impartial trial.

To decide that an application for a change of venue may be defeated by an affidavit of this sort, will be to make a precedent by which this great right and privilege of accused persons may be rendered almost worthless; for it will seldom happen that persons may not be found who will, and honestly, too, believe, whatever may be the excitement in

any given case, that, notwithstanding, the party against whom it may exist can have a fair and impartial trial. We think the venue should have been changed in this case, and that the overruling of the application for that purpose is an error for which the judgment must be reversed.

2. The motion of the defendant to quash and set aside the venire, or list of jurors summoned for the trial, &c., because one of said jurors had been a member of the grand jury by which the indictment was found, and was present when the witnesses were examined in the case, and found and returned the indictment into court, a true bill, &c., was properly overruled.

We are unwilling to hold, that the incompetency of one of the persons named in the list of jurors served on the defendant in a capital case, or the fact that he is shown to be an unfit juror, in the particular case, is a sufficient reason to quash and set aside the panel or list of jurors served on the defendant.

The remedy of the defendant, in such a case, is to challenge the objectionable juror for cause, if he is put on him as one of his triers, or, it may be, to move the court to direct the name of such person to be discarded, and another person to be forthwith summoned to supply his place.— Rev. Code, § 4175.

In the absence of fraud or improper conduct on the part of the officer by whom the jurors are elected and summoned, the panel or list of jurors should not be quashed or set aside, because an improper, incompetent, or unfit person has been summoned as one of the list of jurors served on the defendant.

3. The challenge of the defendant of the juror Geo. W. Tanner, for cause, because he was a member of the grand jury by whom the indictment was found, &c., should have been allowed. This question, so far as we know, has never been decided by this court, but it has been before the courts of several of the States, and uniformly, we believe, decided to be a good challenge for cause, and that the overruling of such a challenge was an error for which the conviction and judgment should be reversed. In note 4 to section 806,

Bishop's Criminal Procedure, it is said: "Where a juror, on a trial for murder, is objected to for cause, and the objection is overruled, to which the prisoner excepts, and afterwards challenges the juror peremptorily, he is entitled to the exception," and cites *Baxter v. The People*, 3 Gilman, 368. And this error will not be cured, although the defendant does not exhaust his peremptory challenges, before the jury is completed.—See, also, *Barton v. The State*, 2 Blackford, 489; *Lithgrow v. The Commonwealth*, 2 Virginia Cases, 279; *O'Driscoll v. The State*, 2 Bay, 153; *The People v. Bodine*, 1 Denio, 281; *Dowdy v. The Commonwealth*, 9 Grattan, 729, referred to in the brief of defendant's counsel. In most, if not all, of these cases, the objection was, that the juror challenged had been a member of the grand jury who found the indictment.

4. The evidence offered by the State, that the defendant, on the day the killing took place, proposed to deceased that they should go and rob a negro man who was supposed to have money, should have been rejected on defendant's objection. It formed no part of the *res gestœ*, and could have had the effect only to create an improper prejudice against the defendant.

5. The question asked by the defendant on the cross-examination of the witness Charles M. Hays, the coroner, who held the inquest over the body of deceased, and had been examined on the part of the State, and had stated that he (witness) had taken a watch and several other articles, the property of the deceased, from the person of the deceased, and that the saddlebags and other articles were delivered to him, as coroner, on the morning after the killing, when he and the jury were holding an inquest on the body of the deceased, and examining into the circumstances of the killing—(the State, before the examination of this witness, having proved, as a part of the confessions of the defendant, that he (defendant) had taken the saddlebags and some other articles, the property of the deceased, from his person at the time of the killing,) was a proper question to be asked. The question so asked of the coroner on cross-examination was, "of whom he re-

ceived the saddlebags and said other articles, which he had stated were delivered to him at the time of holding said inquest?" This should have been permitted to be answered. It was pertinent, both to the confessions proved and to the evidence of said witness on his direct examination. If it was supposed there was an apparent consistency between the confessions of the defendant and the evidence of this witness, then the answer to this question might have enabled the defendant to show that the supposed or apparent inconsistency, if any, could be reconciled, and the confessions of the defendant and the evidence of this witness both be true. For these reasons the said question was proper, and the court mistook the law in sustaining the State's objection to it.

6. What the defendant proposed to prove, both by the witness Lou Hern, and the witnesses John and Mary Kimbrough, was a clear effort on his part to make evidence for himself, and was properly excluded. What was proposed to be proved by the witness Lou Hern, had no connection with, and formed no part of the confessions of defendant, proved on the part of the State. It consisted of acts and declarations of the defendant, done and made at altogether a different time, and consequently formed no part of the res gestæ. Mr. Greenleaf, in his work on Evidence, speaking on this subject, says: "The principal points of attention are, whether the circumstances and declarations offered in proof were cotemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character.—Vol. 1, § 108, and note 3; Shepherd's Dig. p. 49, §§ 73–79.

The same authorities show that what was proposed to be proved by John and Mary Kimbrough, was also rightly excluded. The proposed evidence consisted of declarations of the defendant, made to his wife on his coming home after the killing, as to what he desired her to do and say, &c., and therefore could not be proved by him as evidence in his own behalf.

The conviction and judgment of the court below is reversed, and the cause remanded, with instructions, if the

defendant renews his application for a change of venue, that the same be granted; and the defendant will remain in custody, until acquitted or otherwise discharged by due course of law.