# Howard *v.* The State.

## *Murder.*

(Decided Feb. 18, 1909. Rehearing denied April 6, 1909.
49 South. 108.)

1. *Jury; Venire; Illegality.*—The fact that a capital case set for trial for the second week of court was passed to the succeeding week, did not render the special venire drawn when the case was set, illegal.

2. *Same; Qualifications; Prior Service.*—Under sections 7247 and 7270, Code 1907, regular jurors drawn for the week in which a capital case is set, are not competent as jurors for the trial of such case upon its being passed to a subsequent week of the term, although they were ordered back to serve only for the trial of this special case, during such subsequent week, since they constitute a part of the regular venire and not of the jurors specially drawn.

3. *Charge of Court; Covered by Instructions Given.*—It is not error to refuse instructions substantially covered by written instructions given. (Mayfield, J., dissents.)

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

J. Finley Howard was convicted of murder in the second degree, and he appeals. Reversed and remanded.

It seems from the record that the case was called, the defendant arraigned, and his case set for the second week of court; and an order was entered by the judge drawing 50 men as a special venire, which, together with the ju-

[Howard v. The State.]

rors summoned for that week of court, should constitute the venire for the trial of the cause. The case was passed until a subsequent day of the same week, and when reached on that date was passed until a day of the following week; the court ordering that the 28 jurors regularly summoned and impaneled for the week in which the case was originally set should attend the following week for the purpose of participating in the trial of this case. Motion was made to quash` the venire on this ground, and as each of said 28 regular jurors were placed upon the defendant he objected to being required to pass upon them as jurors for the trial of this cause.

FOSTER, SAMFORD & PRESTWOOD, HENRY OPP, ALBRITTON & ALBRITTON, and J. M. CHILTON, for appellant. The court erred in refusing the motion to quash the venire and in putting upon the defendant the 28 jurors summoned as regular jurors for the second week of court.--Secs. 7265, 7247, 7263, 7840, Code 1907. The court should have given charge 1 asked and refused.—*Brown v. The State*, 118 Ala. 111. The court should have given charge 37.—*Jarvis v. The State*, 138 Ala. 17; *Walker v. The State*, 45 Ala. 640. The facts stated in the petition are sufficient on which to base an application for a change of venue.—*Birdsong v. The State*, 47 Ala. 68; *Seams v. The State*, 84 Ala. 412; *Posey v. The State*, 79 Ala. 494; *Byers v. The State*, 105 Ala. Mere expressions of opinions in affidavits opposing an application for a change of venue are of no value.—*Seams v. The State, supra; Birdsong v. The State, supra.*

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, for the State.

ANDERSON, J.—The trial court did not err in overruling the defendant's motion to quash the venire. The order of the court complied with the statute.—Section 7265 of the Code of 1907. The case was set for trial during the same week of the setting of same, and the special venire drawn, together with the panel organized for said week constituted the venire. The fact that the case was continued over to the next week before the trial was entered into did not render the venire illegal, though as intimated in the case of *Thomas v. State,* 94 Ala. 75, 10 South. 432, the court could have well reset the case and ordered another venire. The regular jurors, as fixed by the statute, to constitute a part of the venire to try a capital case, are those either organized when the case is set for the same week or those drawn when set for a subsequent week; that is, those organized as drawn for the week during which the case is set for trial and not the week when the case may be actually tried.—*Thomas v. State,* 94 Ala. 75, 10 South. 432; *Gerald v. State,* 128 Ala. 6, 29 South. 614. While these cases hold that the continuing of the case over to a week succeeding the one for which it was set for trial before entering into same did not render it necessary to draw a new venire, this case presents a question not directly raised or considered in said cases. The venire may have been legal, and should not have been quashed; but did it contain incompetent jurors who were improperly put upon the defendant over his objection? Not jurors who were incompetent when the venire was drawn, but who became incompetent because of the action of the court in causing them to serve the succeeding week.

Section 7247 of the Code of 1907 provides that no person shall be competent to serve on a petit jury more than one week in any year, unless they are continued over to a succeeding week, because actually engaged in a trial

[Howard v. The State.]

submitted to them during the week of their service. It is true this statute excepts such persons as may be *"specially summoned to serve as jurors in a capital case."* (Italics supplied.) But the regular panel in the case at bar were not "specially summoned to serve," and only became a part of the venire to try same because the week fixed for the trial thereof was the week for which they were organized and serving as regular jurors. Having served the previous week as regular jurors, they became incompetent to serve as such a subsequent week. It is true they were ordered back only to serve the succeeding week upon the venire of this particular case; but they became a part of the venire as regular jurors, and not because they were "specially summoned to serve" as a part of the special venire. These jurors, being incompetent, should not have been put upon the defendant, as it was the imperative duty of the court to have peremptorily excused them as their names were drawn in the organization for trial.—Section 7270 of the Code of 1907. Whether the failure to do this was reversible error, unless the point was taken by the defendant, we need not decide, as it was not waived, for each of said regular jurors were objected to by the defendant. As heretofore stated, this point was not raised nor directly considered in the *Thomas* and *Gerald Cases, supra,* and they are not, therefore authorities against the present holding. The trial had not been entered into during the week from which it was carried over.—*Holland's Case,* 107 Ala. 412, 18 South. 170, 54 Am. St. Rep. 101. Moreover, the statute (section 7247) requires that the jurors must be actually engaged in a trial submitted to them, in order to be competent to try same the succeeding week.

As this case must be reversed, it is needless for us to determine whether or not the trial court erred in refusing a change of venue.

[Howard v. The State.]

The trial court committed no error in ruling upon the evidence and charges. The charges refused the defendant were either bad or had been covered by given charges.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

Dowdell, C. J., and Simpson and Denson, JJ., concur.

MAYFIELD, J.—(dissenting.) The importance of the two questions herein treated, involving, as they do, the right to a fair and impartial trial, which has been well said to be the palladium of our liberties, and which alone can preserve and perpetuate our republican form of government, constrains me to state the reasons which impel me to dissent from the opinion and conclusions of my Brothers. However, I feel that I should preface this opinion by saying that the probability is that my Brothers are right and I am wrong. The desire of each to reach the correct conclusion is no less earnest than mine, while my capacity and experience to pass upon these questions cannot be said to measure up to theirs. We have all examined and studied the same record and authorities, and thereby are led to our respective conclusions; and, notwithstanding my desire to agree with and follow my Brothers, I am firmly of the conviction that, as to these two fundamental questions, the majority opinion is radically wrong.

I concur in the opinion of the majority that this case should be reversed; but I am of the opinion that the reversal is placed upon the wrong ground. The majority opinion, in effect, overrules two, if not more, of the former decisions of this court. It is true the opinion at-

[Howard v. The State.]

tempts to distinguish this case from the other dicisions by saying that the exact question raised in this case, upon which solely this decision is based, to wit, the right to challenge the 24 regular jurors for cause, was not raised in the other cases, and was not, therefore, passsed upon by the court in those cases. It is true that the exact question was not discussed in the cases referred to, but it is not certain they were not raised on those appeals. In fact, the writer is of the opinion that the exact question was necessarily raised on those appeals. Those cases decided (as the majority opinion in this case decides) that when a venire is properly drawn for the first week of the court, and the case is then continued, or passed for trial, till a day of the succeeding week, the venire thus drawn constitutes a proper, legal, and valid venire for the trial on the day to which the case is continued or passed, and that it is not error, but proper and legal, for the trial court to direct the persons constituting the venire to appear in court on that day, and that, when they so appear, the venire is still proper and legal and should not be quashed on motion. If the opinion of the majority is correct, at least 24 of that venire are incompetent jurors for the trial of the particular case, and were rendered so incompetent by the very act of the court in continuing or passing the case to the succeeding week, and in declaring them to constitute the venire, and directing them to appear as special jurors on a particular day of the succeeding week, for the trial of such case.

Can the trial court thus deliberately and knowingly deprive the state or the defendant of 24 veniremen without affecting the validity of the venire? Is it possible to make a valid and proper venire if the very act of making it renders 24 of the number incompetent? It is true that a veniire may be valid, though not a single person thereon be a competent juror. In such case, one act or

law makes the venire, and another act or law renders its constituents incompetent; yet, if they are competent but for the act of drawing or appointing, it must of necessity render the venire invalid. If the state and the defendant are entitled of a right to a venire of 50 particular persons named, from which the jury is to be selected, the court cannot legally deprive either of a single man, much less of half the venire. The *Thomas Case* and the *Gerald Case*, referred to in the majority opinion, should be expressly overruled if this one is to stand. If all can stand, the law is a delusion and a snare, in which the state or the defendant in any capital case can be caught provided the trial cannot be had on the day or during the week for which it was originally set, but is continued or passed to a succeeding week. The principle can work against the accused as well as for him. The venire which is legally drawn and selected may be the one from which he desires to select the jury. "The court puts them upon him, and he cannot object," says the law; yet when he comes to select his 12 jurors from that 50 the law says: "You must select the 12 from 25, instead of from 50. The other 25 were competent when I put them upon you and told you to select from the 50; but the court had the right to deprive you of 25 by passing your case to the next week and ordering them back. The venire is all that the law guarantees you. It does not guarantee you 50 men from which to select." Such is the effect of the majority opinion. It ought to be avoided. If the accused can challenge those 24 jurors for cause, the state can, too; and this, notwithstanding the accused was assured he could select 12 of the entire number.

The majority opinion bases its conclusion as to the incompetency of the 24 regular jurors, and the right to challenge them, solely upon section 7247 of the Code, which renders persons incompetent to serve on a petit

[Howard v. The State.]

jury more than one week during any one year. The
opinion is in error, for the reason that this same section
expressly provides that it shall not apply "to such per-
sons as are specially summoned to serve as jurors in cap-
ital cases." I ask: Were not these 24 regular jurors
as much summoned to serve as jurors in a capital case,
the second week, as were the special jurors who were
summoned for the first week? The court summoned
both the regular and the special jurors for the second
week. The sheriff summoned neither for the second
week. The court, alone summoned all. Would it have
added anything to the competency of those 24 regular
jurors, summoned back by the judge for the trial of
this capital case, if the court had directed the .clerk to
issue a summons to them and instructed the sheriff to
appropriately execute same by serving each juror with
a copy thereof? If this had been done, they would, by
the letter of the statute, have been competent. I ask:
Did not the act of the court in directing them to ap-
pear the next week for the trial of this case "specially
summon them to serve as jurors in a capital case?" The
patent error into which the court has fallen proceeds
from the construction placed upon section 7247, limiting
the exception to the "spcial jurors in capital cases,"
whereas the exception extends to "all persons specially
summoned to serve as jurors in capital cases." The or-
der of the court, made publicly in open court, in the
presence of all parties and of the jurors, is a special
summons. The regular as well as the special jurors
attend the trial by virtue of this summons, and not by
that of the one the sheriff served upon them originally.
The original summons only required them to attend for
the former week—probably for the trial of civil causes..
For the trial of this capital case they attend by virtue
of the special summons, ordered, issued, and served by
the court.

I am of the opinion that this case ought to be reversed for. the failure of the trial court to award a change of venue. I am satisfied, from an examination of the record in this case, that the defendant did not, and cannot, have a fair and an impartial jury to try his case in Covington county until there is a reversal of public sentiment in that county. I do not mean to intimate that the trial court, or other officials, or the jurors, of that county consciously or intentionally denied to the accused a fair and impartial trial; for I feel sure, from an examination of this record, that they did not. On the contrary, all the actions of the trial court in the matter have been reveiwed by this court, and in the light of this review I can find no error prejudicial to the defendant, save that involved in the denial of his application for a change of venire. The charges of the court and the rulings upon the evidence were exceedingly fair to the defendant. If there were any errors therein they were in his favor. The jurors, no doubt, were unconscious of any bias or prejudice against the accused, and as a matter of fact may have had none. It is not the fact that 12 fair and impartial jurors cannot be obtained in a given county, alone, that gives the defendant the right to a change of venue. Prejudice or bias often exists without consciousness thereof on the part of those who entertain it. Everybody knows (and what everybody knows courts know) that when excitement in a community is so great that as against a given person the public mind will tolerate even mob violence, which is incompatible with law and good government, it is difficult, if not impossible, to keep prejudice or bias out of the jury that is to try such person on the charge which aroused the excitement and inspired the thought of violence. In such a state of feeling and excitement, we know that witnesses sometimes hesitate to tell the truth,

the whole truth, and nothing but the truth, if it happens to run counter to this almost irresistible tide of public opinion. Jurors might fail to see the right because of this tide of public opinion, although wholly unconscious of its existence and of its effect on themselves.

That public opinion in Covington county, at the time of this trial, was very much against the accused, no one who reads the record can doubt. Most of the facts which show this are undenied. The conclusion only is denied and disputed . The showing made by the accused purported to contain the statement of facts, which, if true (and it is in greater part undenied), renders it highly improbable that the accused could obtain a fair and impartial trial. The affidavits offered by the state, in rebuttal of these facts, at most and in the main, are the mere gratuitous opinions or conclusions of the affiants that the accused could obtain a fair trial. These affiants were no doubt honest in their statements, but they were also without doubt under the powerful duress of public opinion; and one of the very worst evils flowing from this public opinion and feeling was the determination that the accused should be tried in Covington county. We know that public opinion is insidious, as well as powerful, and that the very best and the very worst of men, alike, unconsciously fall victims to its influence. It is by this record here made to appear that the accused was a young man comparatively unknown in that county; that, relatively speaking, he was "a stranger in a strange land," and had no relatives, except a widowed mother and sister; that the man he killed was an old man and well-known citizen of the county, one "to the manor born," having a large, prominent, and influential connection, by blood and by marriage, scattered throughout the county; that the state's evidence on the preliminary trial was published in full in two coun-

[Howard v. The State.]

ty papers, without any part of the defendant's evidence,
or one word in justification or mitigation of his offense;
that great crowds, from all parts of the county, attended
the preliminary trial; that mutterings and threats of
lynching, on the part of friends of the deceased, were in-
dulged in and frequently repeated; that the public feel-
ing was bitter against the accused, that the killing was
much discussed, and that there was a deep-seated preju-
dice against him throughout the county; that most of the
discussion relative to the killing was in a spirit of ani-
mosity and unfairness toward accused; that one witness
testified that he had heard the matter discussed a thous-
and times, and never heard a friendly word toward ac-
cused; that the sentiment against him was as bitter as
could be; that public feeling on this matter, and at this
trial, became a political issue in the county; that a man
was jeered and derided by a large part of the public if
he even showed or expressed a friendly feeling toward
the accused.   These conditions are not denied to have
existed.   Given their truth, I do not see how it is possbie
for the accused to have a fair and an impartial trial in
that county, however honest or conscientious the jurors
may be.   Change of venue does not impugn the motives,
integrity, or honor of the jurors  or  the  citizens of a
county.   It is based simply upon that inflamed con-
dition of public opinion, whether righteously or un-
righteously aroused, that renders a fair and impartial
trial improbable.   For these reasons I am firmly convinc-
ed that a change of venue should be granted.—*Seams'
Case,* 84 Ala. 410, 4 South. 521; *Posey's Case,* 73 Ala.
490; *Birdsong's Case,* 47 Ala. 68.

The showing made for the state cannot be said in the
main to deny or dispute the facts made by the showings
of the accused for a change of venue, or to show a differ-
ent state or condition of public feeling; but, on the con-

trary, they may in a sense be said to corroborate the showings of the accused. If public sentiment was in such condition as to allow the accused to have a fair and an impartial trial—if the case had not been already tried in the forum of public opinion, in advance of the trial in the courthouse, as the showings of the accused make it appear—it is exceedingly doubtful if 300 affidavits, either for or against a change, could have been procured in that county. That number of citizens, probably, would not have known or cared anything about the matter. The very fact that it is shown that everybody had discussed the case frequently, knew of it, and had tried it on the streets, on the hustings, and in the private homes, renders it improbable that the accused was not required, in that trial to reverse the verdict of public sentiment, and to enter upon his trial with the presumption of guilt attending him, instead of that of innocence which the law guarantees him from the beginning to the end of his trial. For these reasons I am firmly of the conviction that the change of venue should have been granted.

It follows that, if the accused was not entitled to a change of venue in this case, I cannot conceive a case in which he would ever be entitled to it. The showing he made in this case at the time it was first set (which was the proper time for him to make it, for it to be availing at a subsequent time) was all that could be required to authorize the change. It is difficult to note anything that was lacking. The same showing was reoffered and made at the time of the trial, and it was not shown that the duress of public opinion had abated. On the contrary, as appears, it still existed, and clamored for a trial and conviction in that county. If it can be said that the showings on the part of the state rebutted the prima facie case he had made for the change of ven-

ue, then I answer: The state can, in all cases in which public opinion is so wrought up as to authorize the change of venue, make the same and as strong a showing to rebut the prima facie showing for the accused. If the state cannot make the showing in any case that it made in this, it tends rather to show that change of venue should not be granted than that it should; that is to say, nothing but quiescence in public sentiment, or the fact that the duress of public opinion is in favor of accused, and not against him, can prevent the state from always making the same showing in any case which it made in this.