(109 So. 109)

## OWENS v. STATE.  (6 Div. 500.)

(Supreme Court of Alabama. April 1, 1926. Rehearing Denied June 24, 1926.)

**1. Criminal law ⚌1117.**

Under Supreme Court rules 23, 47, newspaper clippings not incorporated in bill of exceptions cannot be considered in determining whether court erred in denying change of venue.

**2. Criminal law ⚌134(1) — Accused, asking change of venue, must reasonably satisfy court that impartial trial and verdict cannot reasonably be expected.**

Burden is on accused, asking change of venue, to show to court's reasonable satisfaction that impartial trial and unbiased verdict cannot reasonaby be expected in circumstances at time and place of trial.

**3. Criminal law ⚌126(1).**

Defendant *held* not prejudiced by denial of change of venue for local prejudice 5 months before trial.

**4. Criminal law ⚌134(4).**

Overruling motion to change venue of robbery trial because of local prejudice *held*, in view of the evidence, not error.

**5. Criminal law ⚌586.**

Motions for continuance are addressed, within limits, to trial court's discretion.

**6. Criminal law ⚌591.**

Overruling motions for continuance of robbery trial because of local prejudice *held* not error.

**7. Jury ⚌66(2)—Drawing of venire by presiding judge of Jefferson circuit court, instead of judge sitting for trial of criminal causes, held not error (Code 1923, §§ 6686, 6688, 6691).**

That presiding judge of circuit court of Jefferson county, instead of one of judges trying criminal causes, drew venire, *held* not error, in view of Code 1923, §§ 6686, 6688, 6691, under which any of judges could draw it; presumption being that they were in accord, though no minute entry was made.

**8. Criminal law ⚌534(2).**

When accused's confession is corroborated by extraneous facts, state may prove it and such facts, though it was improperly procured.

**9. Criminal law ⚌351(3)—Testimony as to arrest and flight of accused held admissible; it being for jury to determine whether flight was evidence of guilt or to escape abuse of officers.**

In trial for robbery officers' testimony as to seeing defendant throw something over fence after they hailed him, finding axe with blood on it, and defendant's flight during search, *held* admissible; it being for jury to determine whether flight evidenced guilt or desire to escape officers' abuse in subduing defendant.

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Criminal law ⬤═394.**

In robbery trial, evidence as to articles taken from defendant's person and alleged to have been victim's property and taken from his person by violence, *held* properly admitted.

**11. Criminal law ⬤═394.**

In robbery trial, officers' testimony as to finding articles taken from victim at place of robbery and seeing signs of body having been dragged therefrom *held* properly admitted, though indictment alleged nothing as to such articles, and information which led police to scene was obtained from defendant by improper means.

**12. Criminal law ⬤═485(1), 489.**

On direct examination, hypothetical questions to expert must conform to tendencies of evidence, but range of cross-examination is largely in trial court's discretion.

**13. Criminal law ⬤═489.**

Where evidence is directed to material fact, not mere opinion, illegal or irrelevant evidence cannot be introduced on cross-examination of expert.

**14. Criminal law ⬤═730(14).**

In trial of negro for robbery with axe, overruling objection to, and refusing to withdraw case from jury because of, solicitor's reference in argument to "the white man's blood" and statement, "Stop the hand of the axe wielder," *held* not reversible error, in view of facts and court's admonition against race feeling.

**15. Criminal law ⬤═1171(1).**

Question whether argument invoking race prejudice constitutes reversible error must be decided on its own merits as disclosed by attendant facts.

**16. Criminal law ⬤═829(1).**

Refusal of charges covered by charges given is not error.

**17. Criminal law ⬤═789(12).**

Charge that, to convict, jury must be satisfied to moral certainty that proof is inconsistent with any rational conclusion other than guilt, and must acquit, unless so convinced of guilt that each would act on such decision in matters of highest concern to his own interest, *held* properly refused as argumentative.

**18. Robbery ⬤═27(6).**

In robbery trial, charge to acquit if satisfied that defendant did what he did from compulsion and fear of being shot or killed *held* properly refused, as abstract.

**19. Criminal law ⬤═784(7), 814(17).**

In robbery trial, charge that circumstantial evidence, to warrant conviction, must exclude every reasonable hypothesis except guilt, and be irreconcilable with theory that another may have done act, *held* properly refused on facts and as failing to hypothecate "reasonable" theory.

Appeal from Circuit Court, Jefferson County; W. E. Fort, Judge.

Frank Owens was convicted of robbery, and he appeals. Affirmed.

These charges were refused to defendant:

"(2) Before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with any other rational conclusion; and, unless the jury are so convinced by the evidence of the defendant's guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must find the defendant is not guilty."

"(9) The humane provision of the law is that upon circumstantial evidence there should not be a conviction unless, to a moral certainty, it excludes every other reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by that full measure of proof the law requires."

"(45) If the jury is satisfied from the evidence that what the defendant did in the alleged robbery he did from compulsion and fear that, unless he did what he did, he would be shot or killed, the jury must acquit the defendant."

Charlton & Charlton, of Birmingham, for appellant.

Defendant's motions for change of venue and continuance should have been granted. Birdsong v. State, 47 Ala. 68; Posey v. State, 73 Ala. 490; Seams v. State, 84 Ala. 410, 4 So. 521; Howard v. State, 159 Ala. 30, 49 So. 110; Hawes v. State, 88 Ala. 37, 7 So. 302; Seay v. State, 207 Ala. 453, 93 So. 405. Requirements as to drawing jurors in capital cases are mandatory. Code 1923, §§ 6687, 6688, 8656, 8616; Montgomery v. Henry, 144 Ala. 629, 39 So. 507, 1 L. R. A. (N. S.) 656, 6 Ann. Cas. 965; Zininam v. State, 186 Ala. 9, 65 So. 56; Evans v. State, 209 Ala. 563, 96 So. 923. Any portion of an involuntary statement by the accused, depicting his actions in connection with the commission of the crime, is wholly inadmissible. Murphy v. State, 63 Ala. 1; Whitehead v. State, 16 Ala. App. 427, 78 So. 467; Moss v. State, 19 Ala. App. 85, 96 So. 451. Hypothetical questions, having no basis in the testimony, should be rejected. Wise v. State, 11 Ala. App. 72, 66 So. 128; Miller v. Whittington, 202 Ala. 406, 80 So. 499. Argument of the solicitor, arousing race prejudice, necessitates a reversal. Tannehill v. State, 159 Ala. 51, 48 So. 662; Moulton v. State, 199 Ala. 411, 74 So. 454; Cassemus v. State, 16 Ala. App. 61, 75 So. 267. The refusal of requested charges constituted error. Charges 1, 2, 47: Brown v. State, 118 Ala. 111, 23 So. 81; Burton v. State, 107 Ala. 108, 18 So. 284. Charge 45: Thomas v. State, 134 Ala. 126, 33 So. 130. Charge 9: Tatum v. State, 20 Ala. App. 24, 100 So. 569.

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Harwell G. Davis, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., Jim Davis, Sol., and Willard Drake, Asst. Sol., both of Birmingham, for the State.

The trial court did not err in refusing to grant the motion for a change of venue or a continuance. Adams v. State, 181 Ala. 58, 61 So. 352; McClain v. State, 182 Ala. 67, 62 So. 241; Godau v. State, 179 Ala. 27, 60 So. 908; Riley v. State, 209 Ala. 505, 96 So. 602. The requirements as to drawing the jury were complied with. Milligan v. State, 208 Ala. 223, 94 So. 170; Evans v. State, 209 Ala. 563, 96 So. 923. Statements of fact, whether made voluntarily or involuntarily, which are corroborated by other evidence, are admissible. Curry v. State, 203 Ala. 242, 82 So. 489; Macon v. State, 179 Ala. 6, 60 So. 312; Read v. State, 195 Ala. 671, 71 So. 96; Love v. State, 124 Ala. 82, 27 So. 217. On cross-examination, it is no error to allow hypothetical questions not based upon the evidence. Parrish v. State, 139 Ala. 16, 36 So. 1012; Wilson v. State, 195 Ala. 679, 71 So. 115. Zimmern v. Standard Motor Car Co., 205 Ala. 580, 88 So. 743. The argument of the solicitor was not such as to necessitate a reversal. Davis v. State, 209 Ala. 409, 96 So. 187. Charges 1, 2, 9, and 47 were properly refused. Jones v. State, 181 Ala. 9, 61 So. 334; Tatum v. State, 20 Ala. App. 24, 100 So. 569; Hill v. State, 211 Ala. 311, 100 So. 315.

SAYRE, J. [1] Defendant, a negro, was convicted of robbery from the person of Richard Warner, a white man. His motion for a change of venue was denied, and he now insists that in this ruling the trial court committed reversible error. The offense with which defendant stood charged was committed in May, 1924. Defendant was indicted May 26th, and was called for trial two days later, but the case was then postponed to June 14th, when the motion for a change of venue was made and overruled and the case continued until the call of the criminal docket in October. On October 23, 1924, defendant was brought to trial. He then renewed his motion for a change of venue, putting in evidence affidavits taken during the first half of June and newspaper clippings dated before and after the crime charged to him. Such of them as antedated the case in hand gave, under great headlines, the details of other crimes of a similar character; some of them describing the trial and conviction of the criminals. As shedding light upon the situation presented by these newspaper accounts, we quote from defendant's brief as follows:

"The crime with which appellant stands charged was one of the very last of a series of murders and murderous assaults, some 25 to 30 in number, and covering a period of 18 months, or thereabouts, and popularly referred to in the Birmingham district as the 'axe murders'"

And in this connection, it should be stated that the victim of the robbery charged in this indictment was, as the evidence without conflict went to show, assaulted and grievously wounded with an axe as he passed the mouth of an alley on his way home between 10 and 11 o'clock, p. m., his pockets turned, and money and a watch taken from his person, as charged in the indictment. These newspaper clippings, transmitted to this court in the original print, have been examined, but may not be taken into consideration in determining the question presented by the motion, for the reason that they have not been incorporated in the bill of exceptions. Pruitt v. McWhorter, 74 Ala. 315; Supreme Court rules 23 and 47. Had they been so incorporated, the originals would be the proper subject of consideration in connection with the bill.

[2-4] However, we think the substance of the situation, minus the headlines, may be fairly inferred from the affidavits put in evidence for and against the motion. It may be conceded that the community where these outrages had occurred was in a certain state of mind concerning the situation generally. They knew, we may assume—because the evidence shows that a good many people knew— that within a few hours of the crime defendant had confessed. This confession was drawn from defendant by such means that the court very properly refused to hear it at the trial, except in so far as it had the corroboration of extraneous facts; but it figured no doubt in the public mind as a confession of guilt. And some of the affidavits submitted by defendant were to the effect that affiants had heard some people express the opinion that a negro accused of an axe murder did not deserve a trial in the law courts, and a number of affiants gave their own opinion that defendant could not get a fair trial. But the opinions of witnesses, unsupported by facts, count for little, and, it will be noted, these affidavits were exhibited to the court in June. Defendant was tried in the last week of the following October. At that time the affidavits taken in June were again placed in evidence and in addition new affidavits by defendant's attorney and W. W. Nelson, who described himself as a "newspaper special feature writer, working for New York and Chicago publications," were offered, and went to show the opinion of affiants that the public mind had been permeated by the fixed opinion as to defendant's guilt to such extent that it would be impossible for him to get a fair and impartial trial at that time. But this again was mere opinion. On the other hand, affidavits in considerable number were offered against the motion, going to prove that affiants had read the newspaper accounts, that they were informed as to public opinion, had heard no threats, nor any other indications of an inflamed state of the public mind, and

expressed opinions that there was nothing to prevent a fair and impartial trial by jury. Nor is there any evidence of public anger against this defendant such as will be found in the cases cited, in which this court held that a change of venue should have been granted, no storming of the jail, no mob seeking to execute vengeance on defendant, no necessity for the attendance of the military forces to protect him, as was the fact in one part or another in most of those cases. Posey v. State, 73 Ala. 490 ("the circumstances attending the trial and conviction of this defendant [Posey] were of so public a character that all men must be more or less cognizant of them"); Howard v. State, 159 Ala. 30, 49 So. 108 (where the right to a change of venue was maintained in a dissenting opinion); Hawes v. State, 88 Ala. 37, 7 So. 302 (a case well remembered in the history of this state, in which our predecessors approved the overruling of a motion for a change of venue, although at an earlier stage of the case a mob, seeking defendant's life, had suffered a bloody repulse of its attack upon the jail, involving the loss of 12 or 15 lives). We do not intend to convey the idea that some such demonstration of public anger as we have noted above must be proved as a condition precedent to a change of venue. In Birdsong v. State, 47 Ala. 68, cited by defendant, it was ruled that the motion should have been granted on an affidavit of the defendant showing denunciatory newspaper comment directed against him specifically and that there was great excitement and prejudice in the minds of the people against affiant; but the comment of the court was directed chiefly against the ineptitude of the opposing affidavits which merely stated that affiants, "several persons," did not believe there was such prejudice or excitement against defendant as would deny him a fair and impartial trial, and the decision was that they were no sufficient answer to the case made by defendant.

All our cases hold that the burden is on the accused to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected in the circumstances obtaining at the time when and in the place where the case is brought to trial. Nor would we abate in the slightest degree that substantial care with which constitutional and statute law and judicial opinion have sought to guard the right of trial by an impartial jury; but in the case shown by the record, considering only the correctness of the ruling made at the time of the trial, since defendant could not have been prejudiced by the ruling made 5 months before (Hawes v. State, supra), we cannot fail to observe that there was a quiet and orderly trial by a jury selected with due care and without unusual difficulty and in the absence of any evidence of public excitement, anger,

or prejudice against defendant. Hence we find no error in the overruling of defendant's motion for a change of venue. The decisions of this court in previous cases—to some of which we have referred—abundantly sustain this conclusion. McClain v. State, 182 Ala. 67, 62 So. 241; Adams v. State, 181 Ala. 58, 61 So. 352; Godau v. State, 179 Ala. 27, 60 So. 908.

[5, 6] Motions for continuance are addressed, within limits, to the discretion of the trial court. In this case the grounds for the motion are found in the same facts and circumstances discussed in our consideration of the application for a change of venue. In the case of Seay v. State, 207 Ala. 453, 93 So. 403, cited by defendant, it was ruled for error that the court denied a motion to continue; but that was a very different case, for there this court held that the entire atmosphere of the trial was permeated by excitement, feeling, and a determination to condemn and punish defendant, regardless of his mental responsibility, to such an extent that during the progress of the trial a mob attempted to storm the jail in order to execute vengeance upon the accused.

[7] Nor do we find error in the method adopted in the drawing of the venire for this and other cases of like character. Defendant refers to sections 6686 et seq. of the Code of 1923, which govern the drawing of juries in Jefferson county. As to that, if we remember the argument made at the bar, emphasis was laid upon the proposition that the presiding judge of the circuit court of Jefferson drew the venire instead of one of the judges sitting for the trial of criminal causes. But the statute provides that the presiding judge may draw and impanel all juries. Section 6691. And "all the judges shall have equal power, authority and jurisdiction." Section 6688. We see no possibility of error in the conduct of this case in respect of the drawing of the venire. Any of the judges might have drawn it and the presumption must be indulged that the judges were in accord as to that, though no minute entry was made in virtue of which the presiding judge assumed to draw the jury or assigned that duty to some other. Brown v. State, 209 Ala. 490, 96 So. 475. Numerous other grounds were assigned in the trial court, but we find no proof of them in the record.

[8, 9] We have heretofore referred to the fact that the court excluded evidence of an alleged confession made by defendant. The court, however, followed the rule that, when the confession of the accused is corroborated by extraneous facts, it is competent for the state to prove to the jury his statement and the corroboratory extraneous facts, even though such confession or statement was improperly procured. Murphy v. State, 63 Ala. 1. The victim of the offense charged in this case knew nothing of the circumstances,

except that as he passed the mouth of the alley he lost consciousness. Shortly afterwards, as the evidence went to show, he was found some distance away lying upon the front porch of a negro house that abutted upon the street, still unconscious. His skull had been fractured by a blow with some blunt instrument. Within an hour or two police officers, cruising about the neighborhood in an automobile, came upon defendant walking along the sidewalk. They hailed and approached him. He was seen to throw something over the fence into the adjacent yard. The officers—there were two of them —went in pursuit and caught him. He was taken back to the automobile and left in charge of one of the officers, while the other, along with a man who happened to pass, went to look for what had been thrown over the fence. They found—or the man who happened along found—a short-handled axe with fresh blood upon it. While the search for the axe was going on defendant sprang from the automobile and fled. His theory was that the officers had grievously manhandled him, inflicting severe wounds, and that his flight should not be taken as evidence of guilt, but as evidence of his desire to escape abuse. The substance of the testimony of the officers was that they used only such force as was necessary to bring about the submission of their prisoner. All this was properly permitted, over numerous objections, to go to the jury. It was for them to say what defendant's flight meant in the circumstances.

[10, 11] From defendant's person were taken some currency of the United States, stained and damp with blood, and a watch— articles afterwards identified by the prosecuting witness Warner as articles which he had on his person when he lost consciousness at the mouth of the alley. These articles were alleged in the indictment to be the property of Warner and to have been taken from his person, against his will, by violence, etc., and, of course, the evidence as to them was properly admitted. But defendant, in the course of an examination prosecuted continuously from the time when he was taken to police headquarters until past midday, some 8 or 10 hours, without care for his wounds and without food or water—though this was in dispute—told the officers conducting the examination where the assault and robbery had been committed and mentioned some articles which he had taken and had thrown aside, and, when they took defendant to the place next morning (the examination still in progress) they found sundry articles, identified by Warner as his property, taken from him at the time of the assault, viz. a letter to Warner from his young daughter in Talladega, a memorandum book, some blank contracts made for use by his business firm, business cards, ear bobs, and other small articles of no particular value,

and saw upon the ground of the unpaved alley signs as if a body had been dragged from out the alley to the paved sidewalk. · This was the evidence of witnesses for the state and was properly admitted, even though the indictment had nothing to allege concerning these other articles, and notwithstanding the police had obtained the information which led them to the scene and the finding of these other articles by improper means. Pressley v. State, 111 Ala. 39, 20 So. 647, and cases cited; Curry v. State, 203 Ala. 242, 82 So. 489.

[12, 13] On direct examination hypothetical questions to an expert must conform to tendencies of the evidence; but on cross-examination, where the purpose is to test the value and accuracy of opinions expressed, the above limitation does not apply and the range of examination is left largely to the discretion of the trial court. Parrish v. State, 139 Ala. 43, 36 So. 1012; Wilson v. State, 195 Ala. 678, 71 So. 115. This statement of principle and citation of authorities will suffice to explain and sustain the rulings of the trial court in a number of instances when expert witnesses were being cross-examined on the subject of defendant's alleged insanity. A more detailed statement of the exceptions reserved under this head would serve no useful purpose. What we say here is not intended to derogate from the sound rule that where the evidence is directed to a fact material to the issue—not mere opinion admissible in some cases—the cross-examination cannot serve the purpose of introducing illegal or irrelevant evidence; evidence which would not be received if the witness had been introduced by the party cross-examining. Bullock v. Wilson, 5 Port. 338; Bailey v. State, 107 Ala. 151, 18 So. 234.

[14, 15] The bill of exceptions shows that in the course of his argument, the solicitor, prosecuting for the state, used the expression "the white man's blood." The context does not appear. And, again, he said, "Stop the hand of the axe wielder." In both instances the court very carefully stated to the jury that the remark, as applied to the facts of the case in hand, was not improper, cautioned them that no race feeling should be allowed to affect their deliberation, overruled defendant's objection and exception, and also his motion that the case be withdrawn from the jury and a mistrial entered. Defendant was a negro; his victim was a white man, as we have said.

We do not think the solicitor's remarks should suffice to bring this case within the rule illustrated in Moulton v. State, 199 Ala. 411, 74 So. 454; Tannehill v. State, 159 Ala. 51, 48 So. 662, and other cases, therein referred to, in which convictions were reversed on account of arguments invoking race prejudice. An appeal to race prejudice constitutes so serious a breach of the privilege of argument that even a colorable approach to

it might well be avoided without, we apprehend, impairing the convincing force of the facts in evidence in any case. Nevertheless, we have for decision the exceptions stated above.· Every such question must be decided upon its own merits as disclosed by the attendant facts. Birmingham Railway v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann. Cas. 1916A, 543. On the facts appearing in this record, and in view of the court's careful statements to the jury, we can hardly predicate reversible error of the action of the trial court in overruling defendant's objections to the solicitor's remarks or its refusal to withdraw the case from the jury. It can hardly be said that an invocation to "stop the hand of the axe wielder" constituted an appeal to race prejudice; at least it cannot be so construed without, perhaps, too narrowly circumscribing the scope and latitude of permissible argument. Probably the solicitor had in his mind's eye local conditions and, most likely, these remarks brought those conditions to the attention of the jury; .still they were justified in the opinion of the trial court as not remediless references to the facts and merits of the very case on trial, and in that opinion we concur, for, otherwise, the privilege of discussion might be unduly curtailed and every conviction of heinous crime subjected to the hazard of some unconsidered remark made by attorneys in the heat of argument. In the case presented by the record there is an absence of evidence of that specific, deliberate, and persistent appeal to race (or other) prejudice such as appeared in Moulton v. State, supra. The same comment may, though in lesser degree, be visited upon the argument made by the solicitor in Tannehill v. State. Without intending to abate in the least the reasonable requirement of the rule laid down in the cases referred to, the court, considering the case disclosed by the record, is not of the opinion that the exceptions based upon the reported remarks of the solicitor should work a reversal of the conviction.

[16] Charge B, requested by defendant, was substantially the same as charge E given at his request. There was, therefore, no error in its refusal.

So refused charge H was covered by given charge K.

[17] Charges like 1, 2, and 47, refused to defendant, have been frequently condemned in this court as mere argument. Davis v. State, 209 Ala. 410, 96 So. 187; Rogers v. State, 117 Ala. 9, 22 So. 666.

Charge 50 was hardly more than a reasonable doubt charge and was covered by the court's oral charge and by special charges given on defendant's request.

Charge 49 was covered by given charge 5.

[18] Charge 45 was properly refused as abstract. Even on a far-fetched interpreta-

tion of the evidence in defendant's favor it was bad. Thomas v. State, 134 Ala. 126, 33 So. 130.

Charges 20 and 41 were the same in every effect as given charge 13.

[19] On the facts shown by this record charge 9 was refused without error. Pitman v. State, 148 Ala. 612, 42 So. 993. Moreover, the charge fails to hypothesize a reasonable theory that some other person may have done the act charged to defendant.

Charge 34 was substantially covered by given charge 19.

We have stated our consideration of the points made in defendant's brief. Several hundred exceptions were reserved during the progress of the trial, and they have been considered, but to treat each separately would far transcend the time and space at our command. We find no reversible error, and the judgment of conviction must be affirmed.

Affirmed.

All the Justices concur.