BULLOCK VS WILSON.

## *Of evidence, in trespass to try title.*

1. The receivers of public monies in the United States' land offices, are public officers, whose appointments will be judicially recognised in the Courts of this State.

2. The duplicate receipt of the receiver of a land office, furnishes, of itself, sufficient evidence of title, to authorise a recovery in trespass to try title.

3. And it would seem unnecessary, for a plaintiff in such action, to shew that his title had been perfected, by a patent having issued on such receipt.

4. A patent would not, of itself, be evidence of title, in a suit commenced anterior to its date.

5. Yet it might not be error to admit such patent in evidence, in a suit commenced previous to its issuance, where its object is to show *a confirmation* of the inchoate, legal title, obtained through a certificate.

6. In the action of trespass to try title, a question to a witness, of—"What is the value of the land and premises, sued for,"—would be irrelevant.

7. On the examinations of a witness, in chief, it is not permissible to ask questions, as the opinions, or conclusions of such witness, unless where the opinion is an inference of skill and judgment.

8. Though in cross examinations of a witness, it is allowed to make pointed and direct inquiries—yet such direct inquiries must be confined to the elucidation of *legal* testimony.

9. Thus—questions by a defendant in trespass to try title, on the cross examination of a witness, of—"Is not the situation of the premises sued for, such, that no one would rent them?" And "Is not the situation of the premises such, as to be wholly useless to any one?"—would be improper, even in mitigation of damages.

This was an action of trespass to try title, determined in the Circuit Court of Shelby county, upon the plea of not guilty. On the trial in the Court below, the plaintiff offered in evidence, the duplicate receipt of the receiver of public monies, for the Tuscaloosa land district, dated on the twenty-eighth day of July, eighteen hundred and thirty-three, showing full payment for the parcel of land in controversy.

It was objected by the defendant, that the certificate was not admissible in evidence—

First—Because a patent had issued for said land, which was in proof.

Secondly—Because it was not proved that the person who signed the certificate, was duly authorised.

It was proved, that the person who had signed the said certificate, had acted in the capacity of receiver for some years, and that the signature to the same, was his hand writing: but no written evidence of his appointment, or of his authority to give such certificate, was produced. And it was said, that there was not sufficient evidence to show the authority of the receiver to issue such certificate, and of its validity. But the objections were overruled.

The plaintiff then introduced a patent, from the United States, *to shew a chain of title in himself*, as was expressed in the bill of exceptions. It appeared, that the said patent, issued on the twenty-eighth day of January, eighteen hundred and thirty-four, after the commencement of the suit.

It was objected, that the plaintiff was not au-

thorised to show title, acquired subsequent to the time of bringing the suit. Which objection was overruled.

To prove the amount of damages, the plaintiff introduced several witnesses, who testified, that "the lands and premises would perhaps rent for, from twelve, fifteen, twenty, twenty-five or thirty dollars, per annum, if any person wished to rent the same." On the cross examination of this witness, the defendant proposed the following question, viz : "What is the value of the lands and premises sued for by the plaintiff."—Which question was, on objection, not permitted to be answered, it being considered by the Court, irrelevant.

On the cross examination of plaintiff's witnesses, the defendant, in mitigation of damages, also propounded the following questions, viz : "Is not the situation of the premises sued for, by the plaintiff, such, that no one would rent them?" "Is not the situation of the premises such, as to be wholly useless to any one?" Which the Court would not allow to be answered.

To all which decisions of the Court, the defendant excepted, and sued out a writ of error to this Court.

*Chilton* for the plaintiffs in error,—*Peck*, contra.

COLLIER, J.—The defendant in error recovered a judgment, in an action of trespass, to try titles on the plea of "not guilty," against the plaintiff, in the Circuit Court of Shelby, adjudging to him, the right to the possession of a certain tract of land,

lying in that country, with damages for its occupancy by the plaintiff.

On the trial, the plaintiff in error, objected to the admissibility of the *duplicate receipt* of the receiver of public monies, at the land office in Tuscaloosa, though it was in due form, and the genuineness of the hand writing, and the fact of the individual subscribing himself as receiver, having long acted in that character, shewn by proof.

The plaintiff, further objected to the introduction of the patent, which had issued upon defendant's purchase, on the ground, that it bore date after the action was brought, though the purchase was made, and the receipt dated, previous to its commencement. Both of which objections were overruled by the Court, and the papers read to the jury.

To shew the amount of damages which the jury should assess, the defendant in error, examined several witness, who stated that the premises in controversy, would perhaps, rent "at from twelve, fifteen, twenty, twenty-five or thirty-dollars, *per annum*, if any person wanted to rent the same."— Upon cross examination, the plaintiff in error propounded to the witnesses, the following question: "What is the value of the land and premises sued for by the plaintiff?" Which on objection, was excluded as irrelevant.

Again, with a view to mitigate the damages, the plaintiff in error, asked of the defendant's witnesses, upon cross examination, these questions:

1. "Is not the situation of the premises sued for by the plaintiff, such that no one would rent them?"

Second.—"Is not the situation of the premises such, as to be wholly useless to any one?"

Both of which questions being objected to, were suppressed by the Court. All of which decisions of the Circuit Court were excepted to, and have been brought up for revision, by writ of error.

1. In regard to the first exception, there was no necessity for proving the appointment of the receiver. He is an officer of the United States, deriving his office from the joint agency of the President and the Senate, and the Court being supposed conversant of the public acts of the government, must judicially recognise him.

2. It is difficult to conceive what purpose was to be subserved, by the introduction of the patent as evidence, inasmuch as it was issued after the commencement of the action. The *duplicate receipt* furnished sufficient evidence of title, to have authorized a recovery, while the patent, because of the lateness of its date, could only have been used as proof to that point, in a suit, subsequently brought. Yet we think, that there was no error in its admission,—the purpose for which it was used being wholly immaterial, "to shew a chain of title in the plaintiff." It was not necessary for defendant to have shewn a perfect title, he might have recovered upon his *inchoate legal title.* (2 Porter R. 441.) But there can certainly be no objection to shewing the state of such title, when the suit was commenced, and then proving that it has been consummated by an act of confirmation, subsequently done. Such is the case at bar. And where the inchoate title is attacked by proof, it

BULLOCK *vs* WILSON.

may be important to shew, that it has been perfected and this, though in the particular action, the proof of perfect title, would not warrant a verdict.

3. The third exception, we think, is not well taken. A direct answer to the question, "What is the value of the land and premises sued for by the plaintiff," would not enable the jury to admeasure the damages they should award. In this country, it is not ascertained, what proportion the yearly occupancy of land, bears to the fee-simple estate; the Court therefore properly rejected the question as irrelevant.

4. In respect to an examination in chief, it may be remarked, that it is not permissible to examine as to the opinions or conclusions of the witness, for these are to be made by the jury; unless where the opinion is an inference of skill and judgment. But the legal course, is to ask such questions as may elicit facts, from which the jury, by an exercise of judgment, may draw their own conclusions. (3 Starkie, Ev. 1736, 1 Ed.)

The object of a cross examination, being the ascertainment of truth, the form of the question is rarely objectionable. The witness not being supposed to be over prompt to serve the interest of the party, against whom he is offered,—in advancement of the end, the inquiry is allowed to be direct and pointed. Yet we are aware of no principle which authorises illegal evidence, to be brought out on cross examination.

In the case of *Jackson vs Son,* (2 Caines R. 178,) it was adjudged that a party against whom a witness was offered, could not introduce, through him,

any proof which would not have been *legal*, had the witness been originally produced on his behalf. (3 Dane's Ab. 540.)

If illegal evidence were allowable on cross examination, instead of promoting truth, it would rather suppress it,—instead of aiding the jury in their deliberations, it would rather interpose obstacles,—instead of enlightening, it would serve to obscure.

The questions stated in the last exception, called for the opinions of the witnesses, and not the facts on which their opinions were founded. They were not required to state the situation of the land, character of the soil, improvements, &c. that the jury might have determined, whether they would be likely to find a tenant, and on what terms. They are then illegal, and were properly suppressed by the Circuit Court.

The judgment is affirmed.

HOPKINS, C. J. not sitting.