HENRY MANN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A juror tendered and accepted, but not sworn, may be challenged as well by the State as by the prisoner.

2. A question to a witness is not objectionable, because general in its terms, the court having authority to restrain or correct the witness when he goes beyond the bounds of legal evidence.

3. It is not error to allow a question in respect to supervision of a prisoner's duties, which does not necessarily imply imputation upon his character.

4. The opinion of a witness, except in expert testimony, is not legitimate evidence, as to any matter that may be reproduced before the jury by a witness, it being the province of the jury to form their own opinion on facts of common experience, uninfluenced by the opinion of any witness on those facts—especially where

such opinion is sought on facts given in the testimony of another witness.

5. A trial on indictment for murder, conviction and recommendation by the jury to mercy, and on appeal a new trial ordered, *nol pros.* entered, and a new indictment for the same offence. Conviction under the new indictment without recommendation to mercy, and motion in arrest of judgment, on the ground that the former verdict was acquittal of murder in the first degree, and the prisoner could not be again tried for that offence : *Held,* 1st. That the question not having been presented in the pleadings or evidence, was not properly before the court ; but 2d. That such state of facts did not bring the case within the rule which prohibits a trial for a higher grade of offence than that found on conviction in a former trial.

Writ of Error to the Circuit Court for Leon county.

The facts of the case are stated in the opinion.

*John S. Beard* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court :

At the fall term of the Circuit Court for Leon county in the year 1886, Henry Mann was indicted for the murder of Edmond Dubois, and on trial was convicted and sentenced to be hung. Motion for a new trial and in arrest of judgment were denied. The case comes here for review, the bill of exceptions setting forth the matters on which are founded the errors we are asked to correct.

The first error assigned is : " In allowing the State to challenge Samuel Hightower, the seventh juror, who had been tendered by the State and accepted by the defence."

We think in regard to this the court did not err in allowing the State to challenge a juror after he had been ten-

dered and accepted, but before being sworn. It has been held in this State that " it was the right of the prisoner to retract his acceptance and object to a juror at any time before he is sworn in chief." O'Connor vs. State, 9 Fla., 216. There are numerous authorities of other States to sustain this ruling and we see no reason to change it. Is there any reason why the State should not be granted the same privilege? The statute gives her five peremptory challenges and the prisoner twenty, and there is nothing in it to make a distinction between them as to the time of exercising the right, by which the prisoner will be permitted to challenge a juror before being sworn, while the State will not. The authorities place them on the same footing. Wharton in his Criminal Pleading and Practice, section 672, says : " The challenge, either by the prosecution or defence, must be before the oath is commenced, down to which period the right exists." In Beauchamp vs. The State, 6 Blackf., 299, the court held that after three jurors had been accepted by the prisoner it was not error to allow the State to challenge one of the three, saying that " either party may challenge at any time between the appearance and the swearing of the jury."

The only case we find seeming to conflict with this rule is Horbach vs. The State, 43 Texas, 242, in which it was held to be error to permit the District Attorney to challenge jurors after the State had passed upon them. But the decision in that case was founded on a statute of the State, and would have been equally applicable to challenges by the prisoner, the court saying, " we know of no law or established practice under the law which sanctions the peremptory challenge of a juror by either party when thus placed on the jury," showing that there was to be no distinction in the right of challenge, within the number al-

lowed to each, between the State and the prisoner. As our State holds the prisoner's right of challenge open until the jury is sworn the same right should be accorded to the State.

The second error assigned is " in overruling defendant's objection to following question to Emile Dubois: ' Please state to the jury what you know of the circumstances attending the death of your son, as to the time and place and circumstances of the incident.' " This rests upon fault in the general terms of the question objected to. It is not an uncommon thing in practice to put such questions, and when put to an intelligent witness, his statement would be likely to save the time of the court and facilitate the dispatch of the case, while any defects in it, as evidence, in the view of either side, may be supplied by answers to subsequent specific questions. The only objection we see to such a mode of eliciting evidence is that the witness, in ignorance of rules of law governing testimony, may make statements obnoxious to those rules ; but this is just as often done in replying to more direct questions, and, in either case, counsel exercising due vigilance can have such statements intercepted or excluded by proper objection. If the witness should prove impracticable, either from ignorance or perverseness, it would be the duty of the court to require his examination to be conducted by questions directing his attention more particularly towards the facts in controversy. The court did not err in allowing the question.

The next error is " in overruling defendant's objection to the following question to Emile Dubois: ' In the ordinary discharge of his duties in feeding the mules was it customary for Henry Mann to be allowed to go into the crib alone ?' "

To understand this and the two succeeding questions objected to it is necessary to premise that the evidence against the prisoner was entirely circumstantial. The deceased was found in the crib on the premises of his father, hanging from a joist with a rope around his neck, and dead. No witness saw how this happened. The State undertakes to show that the prisoner did the hanging, while the theory of the defence is that the deceased, who was about fourteen years old, did it accidentally, if not intentionally. The prisoner was employed as a laborer and servant by the father of deceased, and lived some three hundred yards from the father's dwelling house. The crib was thirty yards from this house. It was about five o'clock in the afternoon when the boy was found hung, the last seen of him by his parents being about two hours before. The prisoner was seen near the house about one o'clock previously, with a rope in his hand, with which he had been whipping a dog, but was not seen about the house after that till sent for to go for a doctor. There were two ropes on the premises belonging to plow gear. It was prisoner's business to feed the mules, and hence the foregoing question.

We think the question was not an improper one. It did not necessarily imply that the object of attending the prisoner to the crib was to guard against his stealing or committing some other offence, and, therefore, could not in itself be considered an attack upon his character of a sort to prejudice the jury. It would have been objectionable if it could be so considered.

The next error is in overruling defendant's objection to following question to R. C. Long: "Supposing there was a rope, as described by Mr. Dubois in his testimony yesterday, across that beam at the point indicated, the bottom of the loop extending ten inches below the beam, could a boy of the height of Edmond Dubois, as testified to yesterday,

stand on the barrel and place his head in the loop ?" This is objected to as being leading and also as improperly seeking the opinion of the witness. The question tends to be a leading one in that it rather suggests the answer to be made, but we pass this to consider the more important and serious objection. An opinion based on a state of facts described by another witness is asked. This is admissible in cases where the opinion sought is that of an expert, because he has special knowledge of the subject matter of enquiry, derived from his studies and observation in his profession or occupation, which is not to be had within the ordinary observation and experience of men. But, further than this, such a question is not permitted. It is only in exceptional cases that a witness who himself testifies to the facts on which an opinion is to be founded will be allowed to give his opinion growing out of those facts. It is, however, sometimes allowed where the results of common observation in regard to common appearances or facts present a condition of things that cannot be reproduced and made palpable to a jury. Commonwealth vs. Sturdivant, 117 Mass., 122 ; Cooper vs. State, 23 Texas, 331. When facts are within the ordinary experience of jurymen the conclusion from those facts will be left to them, and even experts will not be permitted to give conclusions in such instances. Wharton's Criminal Evidence, section 411 ; Dillen vs. State, 58 Miss., 368 ; Kennedy vs. The People, 12 N. Y., 145 ; Hunt vs. State, 9 Texas Ct. App., 166. The reason of the rule is that where jurors selected from the mass of men in general have facts placed before them by a witness, on which, from common knowledge and experience, they are competent to form conclusions, it being their province to form conclusions in the case, there is no need to have that province invaded by opinion of the witness.

Smith, in a note to his Leading Cases, vol. 1, page 630, says of the rule: " It appears to be admitted that the opinion of witness possessing peculiar skill is admissible whenever the subject matter of enquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance ; in other words, when it so far partakes of the nature of a science as to require a course of previous habits, or study, in order to the attainment of a knowledge of it; * * while on the other hand it does not seem to be contended that the opinions of witnesses can be received when the inquiry is into a subject-matter, the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it." See on this subject, Bullock vs. State, 5 Porter, 338 ; Whittier vs. Town of Franklin, 46 N. H., 23 ; Robinson vs. F. & W. R. R. Co., 7 Gray, 92 ; Norman vs. Wells, 17 Wend., in N. Y. Com. Law Reps., 136 ; The People vs. Rector, 19 Wend., in N. Y. Com. Law Reps., 569 ; Jones vs. State, 71 Ind., 66 ; State vs. Parce, 37 La. Ann., 268.

We have been unable to find any case (the instance of experts being omitted), except Paige vs. Hazard, 5 Hill, in N. Y. C. L. R., 603, where the question in regard to the opinion of a witness as evidence arose upon the witness being asked his opinion derived from facts stated by another witness ; and in that case the Supreme Court held that it was clearly correct to exclude such testimony. In an Indiana case, Jones vs. State, 71 Ind., 66, which presented a point somewhat analagous, the ruling was to the same effect. In the case here the question was of the same sort as in 5 Hill, supra, and we think it was improperly allowed. The facts were of a kind that did not require any special knowledge or experience in order to form a conclusion upon them, such as was sought from the witness. From their

common knowledge the jury could take those facts and determine for themselves what they proved, without being guided by the opinion of any one else ; and it is in just this category that the authorities hold the opinion of a witness to be inadmissible. Much more is it inadmissible when the opinion is not founded on his own observation and knowledge of the facts, but upon facts given to the jury in his presence by another witness, this being what the question now before us proposed to elicit from the witness.

We illustrate the rule by reference to some of the narrative testimony given by the witness to whom the question was put. He had stated facts showing that certain tracks of a person were in a line from the house in which the parents of the deceased lived, along which there were obstructions that prevented the person from being seen from the house while on that line; and then he added " the peculiarity of these tracks * * was that the man in traveling (the line) had studiously kept the kitchen chimney (one of the obstructions) covering the open hall window of the upper story " of the house. That is clearly but an opinion that the peculiarity of the tracks, which he afterwards described, gave him ; but it was the facts alone which constituted the peculiarity of the tracks that should have been given to the jury, for they could judge from these whether or not the tracks conformed to any " studious " purpose. Again, the witness testified to another row of tracks which went up to a large oak tree, and he continued : " the party making those tracks stood behind the tree, and tramped around there somewhat, but did not expose his body from behind the tree." Whether the man exposed his body or not, the witness could not know any more than the jury, when the jury were put in possession of the facts from which his inference was drawn. That inference, or what-

ever might be the proper inference, should have been left to them.

The importance of adhering to the rule is plainly manifested in this case. The question was one which led to a principal turning point in the evidence. If answered in the negative, that is, that the boy could not have stood on the barrel and put his head in the noose of the rope, which is clearly the effect of the answer of the witness in the case, that set aside the theory of the defense that it was probable the hanging occurred by deceased's own act. It was, therefore, specially important that the jury should have been left to form their own opinion from the facts, uninfluenced by the opinion of the witness.

The next error, the 5th, we deem unimportant. It is: "In overruling defendant's objection to following question to Emile Dubois: 'Do you remember indicating to me the point in the crib where you found your son's body suspended?'" So far as we can see, there is nothing in this to hurt or help either side.

The 6th assigns for error the "overruling of defendant's motion for a new trial." As to this, we will not go into the evidence, and express our opinion whether or not the verdict should have been other than it was. The case will have to go back for a new trial on account of error already herein adjudicated, and it would be improper for us to indulge in comments which might have effect to influence the jury in that trial. It is, therefore, sufficient to say in regard to this assignment that it was error to overrule defendant's motion, for the reason that the court erred on the former trial in allowing a question intended to elicit the opinion of a witness on a matter in which it was the province of the jury to deduce from the facts their own opinion.

Finally, error is alleged in "overruling defendant's mo-

tion in arrest of judgment." The grounds for the motion are—1st. " That the indictment upon which the first trial in this cause was had was *noll prossed* and a second indictment found by the grand jury for the fall term of said Circuit Court, and the second trial was had upon the second indictment; 2d. The jury in the first trial of said cause found then a verdict of guilty and recommended the prisoner to the mercy of the court, while the jury in the second trial found a verdict of guilty without a recommendation."

There is nothing in the record of the case now before us but this that has any reference to a former indictment of the prisoner, and his conviction under it. It is not pleaded in this case, nor was any evidence sought to be given in regard to it. We are, therefore, asked to consider a question, the facts of which are not presented by the record in a way to authorize us to consider it. So far as appears from the pleadings, and from the record of the proceedings up to the time of this motion, the case was entirely a new one. On this ground alone, we think the court did not err in overruling the motion.

But as the case is to return for further proceedings, it may be well for us to say that if the question had been properly presented, it would not have furnished sufficient cause to arrest the judgment. While it may be true, as we think, though some courts hold otherwise, that a party who is tried on an indictment for a higher offence, and convicted of a lower grade of the offence, shall not be again tried for the higher, or for any grade of offence above that for which he was convicted, yet that is not the case which the motion presents to us. The conviction was for murder in the first degree. The recommendation to mercy did not change the nature or grade of the crime, but only the manner of punishment. This recommendation may, unlike the verdict,

be made by a mere majority of the jury. Chap. 1387, Acts 1872. Such a thing as trial for murder, which requires a recommendation to mercy, is unknown to the law. The court is limited to the simple announcement to the jury that if they think the case one calling for it, they can, on finding the party guilty, accompany their verdict with a recommendation to mercy; but the court cannot direct that as a necessary part of the case, and would be held to have committed error if it did. It seems to us, from this view, that if a party convicted of a crime with the penalty reduced, has that conviction set aside upon his own urgency, he is not thereby relieved from trial, for the same crime, with the risk of any penalty authorized by law that the result may bring.

The judgment is reversed, and the case will be remanded for a new trial.