# Patterson *v.* The State.

## *Murder.*

(Decided Jan. 19, 1911. 54 South. 696.)

1. *Jury; Grand Jury; Statutory Provisions.*—The jury law Acts 1909, p. 305, although general and exclusive, and applying to all the courts of the state and repealing all laws in conflict therewith, does not repeal sections 7282-7306, Code 1907, which relate to the grand jury.

2. *Same; Number of Jurors.*—The provisions authorizing a judge, when no petit jurors are drawn, to draw a venire for a grand jury containing as many names as he may see fit (Section 18, Special Acts 1909, p. 312) are subject only to the provisions of section

[Patterson v. The State.]

7282-3, Code 1907, hence, under said act a grand jury composed of only fifteen is legal.

3. *Same.*—The provision of the jury law requiring the drawing of fifty names for grand and petit juries, when petit juries are needed for the first week of the term, does not govern a grand jury organized from a venire drawn by the court in a week when no petit juries were drawn.

4. *Same.*—Since section 7300 and 7304, Code 1907, are not abrogated by the present jury law, an indictment may be found by a grand jury composed of only fourteen members.

5. *Same; Summoning.*—Since section 32, Special Acts 1909, p. 317, was enacted by the legislature with the knowledge that it had been repeatedly decided that the names of jurors engaged in the trial of a cause did not have to go into the box upon the organization of a trial jury for a capital case, and as there is nothing therein to show that it was intended to abrogate these decisions, it is not encumbent upon the court, to ascertain the qualifications of those regular jurors engaged in the trial of another case when the jury in a capital case is being considered.

6. *Homicide; Evidence; Dying Declarations.*—In order to be admissible dying declarations must be made at a time when the party making them realizes his impending dissolution ,and when motives for falsehood may be presumed to have been lost in the despair of life.

7. *Same; Predicate.*—Where one twice expressed the belief that he would not recover, he having received two ugly and serious wounds, declarations made by him concerning the homicide were admissible.

8. *Same; Threats.*—It is admissible to show threats made by the defendant against the deceased, although made six or seven months before the killing.

9. *Same; Motive.*—As tending to show ill will or animus, it is competent for the state to introduce evidence that about five days before the killing defendant told a witness that he and deceased had had a difference.

10. *Witnesses; Impeachment; Predicate.*—Where a witness testified on cross examination that he knew one C., and saw him just before the shooting, but did not tell him there was going to be a fight, this was a sufficient predicate for the proof of statements to the contrary made by .the witness.

11. *Continuance; Absent Witness; Impeachment.*—While the state may not impeach the showing made for an absent witness by proof of contradictory statements, for want of a predicate, his testimony may be impeached by proof of bad character.

APPEAL from Clay County Court.

Heard before Hon. E. J. GARRISON.

Mal Patterson was convicted of manslaughter and appeals. Affirmed.

The orders of the court, were to summon 20 men whose names appear on the venire of grand jurors. In obedience to that summons, the sheriff summoned all except 2, reported as "not found" in his county. When the grand jury was organized, the remaining 18 answered to their names; but the court for good and sufficient reasons shown did excuse 3 of them, leaving 15 jurors present, who were duly impaneled as the grand jury for the term of the court. On a later day of the court, the fact that the foreman of the grand jury was connected by marriage with a party sought to be charged with an offense against the law of Alabama having been made known to the presiding judge in open court, the foreman was excused from the consideration of the case of State v. Grover Ingram, and the court appointed as special foreman A. Blake Steel, a member of the grand jury as originally organized. The proceedings further show that on the return of the indictment in open court the original foreman, together with 14 other grand jurors, were present, and, that they returned into open court 25 true bills, together with an additional special report of one indictment signed by A. Blake Steel as such foreman, in the consideration of which the regular foreman did not participate.

The defendant pleaded in abatement and by way of motion to quash the indictment as follows: "(1) That the grand jury which preferred the indictment was not drawn from the hat or box containing the whole list of jurors drawn, passed on, and qualified for this term of court. (2) For that the grand jury which preferred the indictment was of less number than 18, to wit, 15. (3) The names of 18 jurors to compose the grand jury were not drawn from the hat or box containing the whole list or venire of jurors qualified for this term of court. (4) For that the alleged grand jury which pre-

[Patterson v. The State.]

ferred the indictment was not composed of 18 qualified citizens of the county. (5) For that the box or hat in which the presiding judge drew the names of the citizens who composed the grand jury in open court did not contain the name of 18 citizens of the county whose qualifications had been ascertained by the court. (6) For that the grand jury which preferred this indictment consisted of only 14 members."

WHATLEY & CORNELIUS, for appellant. The indictment in this case is illegal and void because preferred by a grand jury not organized as required by law.—Secs. 15, 16, 20, Acts 1909, p. 305. Sections 7282 and 7283, Code 1907 were repealed by the jury law.— *Oliver v. The State* 66 Ala. 8. When the court organized a grand jury of fifteen this was a judicial determination that the grand jury should consist of that number for the term.—*Ramsey v. The State,* 113 Ala. 49; *Billingsley v. The State,* 68 Ala. 491; *Clemmons v. The State,* 52 South. 467. As to the proper course to pursue, see— *Johnson v. The State,* 102 Ala. 24. Where ministerial officers in drawing the jury proceed contrary to the statute, the indictment should be quashed.—*Bates v. The State,* 118 Ala. 102; *Nelson v. The State,* 122 Ala. 675. A sufficient predicate was not laid for the introduction of the dying declarations.—*Titus v. The State,* 117 Ala. 17; *Justice v. The State,* 99 Ala. 180. The court erred in admitting Cheney's evidence as to certain statements made by the defendant.—6 Enc. of Evi. 621-2. The evidence in this case showed that the deceased had returned to where the accused was, and under the case of *Allen v. The State,* 111 Ala. 80, *Owens v. The State,* 74 Ala. 401, and *Hall v. The State,* 51 Ala. 9, the declarations of these witnesses were not admissible.

ALEXANDER M. GARBER, Attorney General, and BLACK & WHATLEY, for the State. Counsel insist that there was no error attending the formation of the grand jury, and that the jury law does not by implication or otherwise repeal those sections of the Code relative to the formation of the grand jury, and in support thereof, they cite.—*Rogers v. The State,* 144 Ala. 32; *Dunn v. The State,* 143 Ala. 69; *Miller v. The State,* 3 Ala. 343; 3 Mumph. 49; 35 S. C. 344; 2 Cush. 149; 27 L. R. A. 846 and note; 28 L. R. A. 35 and note.

ANDERSON, J.—The jury law (Acts Sp. Sess. 1909, p. 305 is a general law, and is exclusive, in so far as it may operate; and it applies to all courts in the state, and repeals all laws, local, special, or general, that may be in conflict therewith. This law, however, does not repeal article 8 p. 729, of the Criminal Code, as to what may constitute a grand jury, and which provides for its formation, oath, powers, duties, and business. Section 7282 provides that at least 15 persons must be sworn on the grand jury. Section 7283 says what must be done to complete the grand jury, if 15 do not appear; and it may be that the act provides the manner of completion, in case a sufficient number do not appear to constitute a legal grand jury of 15, and, therefore, repeals section 7283 to this extent, but no further. It is no doubt the purpose of the act to provide, in most cases, for the organization of a grand jury to be composed of 18 persons, and which can, as a rule, be done, in a large majority of cases, as section 18, requires that the first 18 drawn shall constitute the grand jury, and we know that in most of the courts in this state, and especially the circuit court, there are usually petit juries needed and used during the same week that the grand jury is organized, and when this is the case there will in almost

every instance be a sufficient number of persons pres-
ent to assure 18 grand jurors, as the first 18 to be drawn
shall constitute the grand jury; but even in this in-
stance, if there are not enough jurors present to obtain
18 grand jurors, section 18 makes no provision requir-
ing that the number be increased to 18, and under the
terms of sections 7282, 7283, of the Code, the court
would only have to increase the number when the num-
ber available was less than 15. Moreover, there are city
and county courts in the state, and sometimes the cir-
cuit courts do not always have or need petit juries dur-
ing the week of the organization of a grand jury, and
the act provides for instances of this nature, by au-
thorizing the judge to draw a venire for same, and which
may contain such number of names as he may deem
necessary.

It is true section 18 provides that they must be
"drawn, summoned and impaneled, as provided in this
act"; but the act in question does not require that 18
be impaneled, unless that number appears and is ready
to serve, and does not preclude the organization of a
grand jury from less than 18, leaving a field of opera-
tion for section 7282, which defines a grand jury of 15
as a legal one, and section 7283, which provides for an
increase only in case the number is reduced below 15.
This law was no doubt intended to reform, and to some
extent revolutionize, the jury system, and in cases where
the court had petit juries the same week of the organi-
zation of a grand jury there could be little difficulty in
having a grand jury composed of 18 persons, thus giv-
ing less opportunity to obstruct the finding of indict-
ments by a few unscrupulous or obstreperous men who
may be members thereof. So, too, would the grand jury
be unknown until the drawing and organization, as all
the names will go in the box, and no one can know who

would be the grand jurors until the first 18 names are drawn. The Legislature, however, had in mind numerous instances, where grand juries would be organized at times when petit juries were not needed or drawn, and made ample provision therefor, both in section 18 and section 24, and which clothe the judge with much discretion as to the number to be drawn, and nowhere does it appear in the act that it will require 18 persons to constitute a legal grand jury, or that it be organized with 18 persons, except where they appear and are ready for service. It results that in some instances a grand jury will be composed of 18 persons and in others it may consist of but 15; but this condition has always prevailed, for under the old law, if all of the members drawn and summoned appeared and offered no excuse, they would all go on the grand jury, and, on the other hand, if the number was reduced to 15, there would still be a legal grand jury—the number ranging from a minimum of 15 to the maximum number of those drawn. We therefore hold that, there being 15 persons present and ready to serve as grand jurors, the trial court properly organized them into a legal grand jury. We are inclined to agree with counsel for appellant that, if the grand jury was organized with a less number of persons than is required to constitute a legal grand jury, the action would not be saved by the curative influence of sections 23 and 29; but, as heretofore held, the grand jury was composed of the requisite number and was legally organized.

The grand jury returning this indictment was organized during a week of the court when no petit juries were needed or impaneled, and was drawn at a time when no petit jurors were drawn; and section 15 of the act requires the drawing of 50 persons only when petit juries are also needed for the first week of the term. If

[Patterson v. The State.]

a grand and petit jury are desired or needed, it would be the duty of the judge to draw 50 names; but when only a grand jury is desired, he has ample authority, under the act, to draw such number as he may deem necessary. The law gave the judge the authority to draw the grand jury in question, and, his order or action in so doing being authorized, the defendant can take no advantage, as to the time or manner of drawing same, or to the selection, summoning, or impaneling of same. Sections 23 and 29 of the act, page 305.

There is no merit in the point that only 14 members of the grand jury were present when the indictment was found. Section 7300 requires only the concurrence of 12 jurors as being necessary, and section 7304 requires supplying a deficiency only in case the grand jury is reduced below 13. These sections are not affected by the jury law of 1909. The trial court did not err in rulings testing the validity of the indictment.

Section 32 of the jury law of 1909, in providing for juries to try capital cases, requires that the venire from which the jury to try the case must be drawn shall consist of not less than 50 nor more than 100 persons, including those drawn and summoned on the regular juries for the week. "On the day set for the trial, if the cause is ready for trial, the court must inquire into and, pass upon the qualifications of all the persons who appear in court in response to the summons to serve as jurors, and shall cause the names of all those whom the court may hold to be competent to try the defendant or defendants to be placed on lists," etc. This act was passed with a full knowledge of the method of transacting business in the trial courts, and the Legislature was cognizant of the fact, that the regular jurors had other cases to try and might be engaged in the consideration of same when a capital case was called up for

trial, and under the repeated decisions of this court it has been held that the names of such regular jurors as were engaged in the trial of some other case did not have to go in the box upon the organization of the trial jury. The Legislature therefore intended that this act was in this respect subject to the established rulings of this court, as there is nothing contained therein to evince a contrary intent, and we hold that the trial court did not err in not ascertaining the qualification of those regular jurors engaged in the consideration of another case when the jury in question was being organized.

Dying declarations, in order to be admissible, must be made when the party making them has the realization and solemn sense of impending death, when the motive for falsehood may be presumed to have been lost in the dispair of life. We think, however, a proper predicate was laid in the instant case, and the circumstances of which bring it within the influence of *McEwen v. State,* 152 Ala. 38, 44 South. 619, and *Gregory v. State,* 140 Ala. 16, 37 South. 259, and which differentiate this and those cases from the cases of *Titus v. State,* 117 Ala. 17, 23 South. 77, and *Justice v. State,* 99 Ala. 180, 13 South. 658. Here the deceased had received two ugly and severe wounds and died within less than a week after they were inflicted. He gradually grew worse and reached a semiconscious condition for a day or so before his death, and the declarations in question were made probably at a time when he was taking a turn for the worse, and he not only expressed the belief that he would never recover, on Sunday, but repeated it on Monday. Nor was the evidence, as to who shot him and how they shot him, a mere conclusion or opinion of the witness. Moreover, if it was, the objection to same did not take this point.

It is true that, when a showing has been introduced for an absent witness, the opposite party will not be allowed to impeach the witness by proof of contradictory statements; the reason being that the necessary predicate cannot be laid. But the principle has no application when the impeachment is by showing the general bad character of the witness.—*Gregory v. State,* 140 Ala. 16, 37 South. 259, and cases there cited. A showing having been introduced by the defendant for the absent witness Dillard, the state was authorized to impeach him by proof of his general bad character.

There was no error in permitting the witness Baker to testify as to threats made by the defendant against the deceased. The witness stated that they were made "six or seven months ago"—not years, as claimed in brief of counsel. The witness stated that he had known the defendant six or seven years, but stated that the threats were made at "Mt. Zion Church six or seven months ago." Nor was there any error in permitting the witness Cook to testify that defendant told him on May 2d, which was just previous to the shooting on May 7th, that there was a difference between him and the deceased. It did not, perhaps, amount to a threat; but it tended to show ill will or animus, and its weight and sufficiency was a question for the jury.

There was no error in permitting the witness Cheney to state "that Wallace Patterson came to him while he was in the yard just before the shooting, and told him that there was going to be a fight." Wallace Patterson had testified for the defendant, and this testimony tended to contradict him, by showing that he had either misrepresented or suppressed some of the facts and details naturally affecting his testimony. The record also shows that a predicate was laid for what the said Patterson told Cheney. The said Patterson testified on

cross-examination (page 49 of the record) : "I know Seaborne Cheney, and saw him just before the shooting occurred; but I did not tell him there was going to be a fight."

While we have only discussed the questions worthy of consideration, the other objections and exceptions disclosed by the record have not been overlooked, and they are all without merit, and present no ruling that should reverse the case.

The judgment of the county court is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ. concur.