# *Ex Parte* Lawler.

## *Mandamus.*

(Decided December 16, 1913. 64 South. 102.)

1. *Grand Jury; Number; Statute; Construction.*—Construing section 7283, Code 1907, and sections 17, 18, 20-1 Acts 1909, p. 312, it is held that the court is not required to add new names or members to the grand jury unless its number is reduced below fifteen, though the court may in its discretion increase the number to eighteen where there are less than that number on the grand jury.

2. *Same; Additional Jurors.*—The provisions of section 7305, Code 1907, have reference only to the addition of temporary and not permanent grand jurors.

3. *Statutes; Construction; Revision.*—While the addition of new words in a revision of a statute does not necessarily alter the construction of such statute, yet if the legislative purpose to make a change clearly appears, it will be construed to do so.

ORIGINAL petition in the Supreme Court.

Petition for mandamus by W. T. Lawler, individually and as Judge of Probate, to compel James H. Ballentine, judge of the law and equity court of Madison county, to strike from the court files a grand jury report, recommending petitioner's impeachment. Petition denied.

The grounds of petition are that when the grand jury was organized that made the report recommending the impeachment of the probate judge, it consisted of 18 qualified citizens of the county, and that it was organized October 6, 1913; that on October 20, 1913, two members of said grand jury were excused by the court, and two other qualified citizens were drawn and impaneled and sworn as grand jurors to take the place of the two that had been excused, and on October 27, 1913, three other members of said original body were excused by the court, and three qualified citizens of the county

[Ex Parte Lawler.]

drawn and impaneled and placed upon the grand jury to take the place of those three which had been excused, and on October 30, 1913, said body as thus constituted, and consisting of 13 men who had been originally impaneled as members of said grand jury, together with the five who were afterwards drawn and impaneled and placed upon said grand jury, made and returned into open court their final report in writing, among other things recommending impeachment proceedings against petitioner as probate judge of Madison county. Then follows a history of the original application to the judge of the Madison law, and equity court, to strike from the files and expunge from the record the report of said body and his orders and decrees denying petitioner's motion. The respondent made motion to quash the petition, and also submitted his answer as appears in the opinion.

SPRAGINS & SPEAKE, and COOPER & COOPER, for appellant. It is only when the membership of the grand jury is reduced below fifteen that the presiding judge has authority to empanel new members to take the place of those who have been excused.—*Finley v. State,* 61 Ala. 201; *Berry v. State,* 63 Ala. 126; *Nordan v. State,* 143 Ala. 13; *Osborn v. State,* 154 Ala. 44; *Patterson v. State,* 171 Ala. 2; *Yeager v. State,* 62 South. 318. The impeachment report is signed by the original eighteen members of the grand jury including the two who were placed thereon when the membership was reduced to sixteen, and the three who were put on when the membership was afterwards reduced to fifteen. Hence, it is clear that they all participated in the recommendation and the report. Such proceeding is highly penal in its nature, and is governed by the laws applicable to criminal cases.—*Nelson v. State,* 62 South. 189.

R. C. BRICKELL, Attorney General, and JAMES H. BALLENTINE, for appellee. Mandamus was not the proper remedy.—*Sessions v. Boykin*, 78 Ala. 328; *State v. Wilson*, 123 Ala. 281. Mandamus will not lie unless the right is clear and certain, and the statute must expressly authorize the officer to do the act.—*Chisholm v. McGhee*, 41 Ala. 192; *State v. Wilson, supra.* The report is required to be entered upon the minutes, and the court is not required to make any order directing the same to be done, but it is the duty of the clerk to do so.—Sec. 7124, Code 1907; *State, ex rel. v. Savage,* 89 Ala. 7. Mandamus will not lie to compel such action on the part of the court.—*Ex parte Dickens,* 162 Ala. 272; *Buford v. Christian,* 149 Ala. 348.

DE GRAFFENRIED, J.—Section 7283 of the Code of 1907 is in the following language: "If fifteen persons, duly qualified to serve as grand jurors, do not appear, or if the number of those who appear is reduced below fifteen by reason of discharges, or excuses allowed by the court, of by any other cause, the court must cause an order to be entered on the minutes, commanding the sheriff to summon from the qualified citizens of the county twice the number of persons required to complete the grand jury, which order the sheriff must forthwith execute, *and in any event the court may in its discretion order a sufficient number of qualified jurors summoned to increase the number of grand jurors to eighteen,* and the persons summoned by him are bound to appear presently, and, if necessary, to serve as grand jurors, under the same penalties as if they had been regularly drawn and summoned on the original list of grand jurors for the term; and of the persons so summoned, if a greater number appear than is necessary to complete the grand jury, the names must be written

on separate slips of paper, which must be folded or rolled up, so that the name may not be visible, placed in a box, or some substitute therefor, and from them must be drawn, under the direction of the court, a sufficient number of names to complete the grand jury." The above section of the Code, without the italicized portions, appeared in all of our previous Codes, and has many times been construed by this court. The italicized portions were added to the section when it was brought forward into our present Code. *Prior* to the change which we have noted in italics, this court, by a long line of decisions, held that when a grand jury is once legally organized, the court in which the organization was perfected, had *no* power to add any other person to said grand jury unless the number was reduced below 15.—*Berry v. State,* 63 Ala. 127; *Kilgore's Case,* 74 Ala. 1; *Blevins v. State,* 68 Ala. 92; *Nordan v. State,* 143 Ala. 13, 39 South. 406; *Osborn v. State,* 154 Ala. 44, 45 South. 666. While the above section of the Code, by a strict construction *might* have been held to apply only to the action of the court in *organizing* the grand jury, nevertheless this court has uniformly held that the section, before it was brought forward into the present Code, read in connection with section 7282 of the Code, conferred the power upon, and *required* the court to *increase* the grand jury when the number *fell below 15.* In other words, the section, taken in connection with section 7282 of the Code, was held to apply to grand juries already organized, as well as to those while in the process of organization.—*Peters v. State,* 98 Ala. 38, 13 South. 334; *Ramsey v. State,* 113 Ala. 49, 21 South. 209.

It will be noted that under the language of the statute as it existed *prior* to our present Code, the court was *required,* when *organizing* a grand jury, to meet the

provisions of section 7282, which provides that "at least fifteen persons must be sworn on the grand jury," to organize a grand jury of that many persons in *any* event, and this court held that, in *no* event, could the court, if as many as 15 qualified persons appeared and were ready and willing without excuse to serve as grand jurors, increase the grand jury *beyond* that number. If as many as 18 or 17 or 16 or 15 qualified persons appeared as grand jurors without excuse, then it was the duty of the court to organize a grand jury composed of said 18, or 17, or 16, or 15, persons so appearing. In other words, under the decisions of this court prior to the adoption of our present Code, a court had no right, under the very language of the above quoted statute, in perfecting the organization of a grand jury, to *add to* those qualified persons appearing as grand jurors unless those appearing as duly qualified grand jurors were, for some reason, reduced below the number 15. If they were reduced below the number *15, then* the court was *required* to *increase* the number to 15, and, under the above decisions, the court, in such contingency, was, in its *discretion, authorized* to increase the number to *18.* With reference to the power of the court to increase the number of grand jurors after the grand jury's organization, this court held, in construing said sections, that so long as a grand jury contained as many as 15 persons, then the court had no power to *increase* the number of grand jurors; but that if the number fell *below* 15 *then* that the court *must* increase the number so as to constitute a legal grand jury.—*Peters v. State, supra; Ramsey v. State,* The power of the court, therefore, to *increase* the number of grand jurors, always, prior to the adoption of our present Code, depended upon *one event*, viz., the reduction of the number of grand jurors below *15.* The result of the lan-

guage of the above sections and of the above decisions
was that indictments were frequently held by this court
to have been vitiated because a court, upon excusing a
grand juror for the term, would sometimes fill his place
with another qualified person without observing that
under the statute, the *one* event upon which the power
of the court to fill such vacancy arose had *not* occurred,
viz., that the grand jury had not been reduced below
the number 15.—*Blevins v. State, supra; Cross's Case,
supra; Kilgore's Case, supra.* To remedy this deficien-
cy in our law the Legislature, in adopting our present
Code, added the above italicized words to our statute
and said, in plain language, that *"in any"*—not *one*—
*"event* the court may, in its discretion, order a sufficient
number of qualified jurors summoned to increase the
number of grand jurors to *18."*

The sections now under consideration were brought·
forward into our Codes of 1876, 1886, and 1896, with
the construction which this court had placed upon them
—and which construction we have above explained—
and when the Legislatures adopted said Codes of 1876,
1886, and 1896, they, in effect, wrote into the sections,
as a part of them, the decisions of this court construing
them. When, therefore, the Legislature, in adopting
the present Code, placed in section 7283 the words
which we have above italicized, it clearly intended to
declare that, in the future, at all times and in any event,
a court should have the right within its discretion, if
for any valid reason a grand jury was reduced in num-
ber below 18, to increase that number to 18. The sec-
tions, as they are now worded, require that a grand jury
*shall,* at all times, be composed of at least 15 qualified
grand jurors, and that at all times it may, in the discre-
tion of the court, be kept at the number of 18. While
in the revision of a statute the addition thereto of new

28—185

words does not necessarily alter the construction of the former statute, nevertheless, when the legislative purpose in making the change plainly appears, then the law will be construed to be changed.

2. Section 18 of the new jury law (see pamp. Gen. & Loc. Acts, Sp. Sess. 1909, p. 312) provides as follows: "The court shall require all persons named in the venire to be called, and shall then hear all excuses and claims of exemptions and disqualifications, and after passing upon all of the excuses, or claims, shall cause the names of all the jurors in attendance upon the court on that day, and who have not been excused by the court, to be written on separate slips of paper, or cards; and placed in a hat, or box, and thereupon the judge of the court *must,* in open court, draw from the hat, or box, at terms requiring grand juries, the names of eighteen jurors who shall be empanelled and sworn as the grand jury for that term of the court," etc. We direct attention to the fact that *when,* in impaneling a grand jury, as many as 18 qualified persons appear without excuse, the court is required by the above-quoted act, to impanel *that number*—18—as the grand jury.—*Patterson v. State,* 171 Ala. 2, 54 South. 696. The provisions of the above act, in so far as the number of said grand jurors to be impaneled is concerned, are mandatory, and *when* as many as 18 qualified persons appear without excuse, *then* the grand jury *must* be organized with 18 grand jurors.—*Patterson v. State, supra.* If *less* than 18, but as many as 15, appear without excuse, then the court may, under the provisions of section 7283 of the Code, organize the grand jury at the number *thus* appearing.—*Patterson v. State, supra.* Other instances in which a grand jury composed of less than 18 persons may be legally organized are fully set forth in the cause of *Patterson v. State, supra.*

3. It, therefore, appears from the very language of the above-quoted section 18 of the jury law that when as many as 18 legally qualified persons appear without excuse, then the court *must* organize a grand jury composed of that many grand jurors. In such a case a grand jury composed of 18 persons is the only legal grand jury which the court *can* organize, and while it would, after having been so organized, under the provisions of section 7282 of the Code, remain a *legal* grand jury until its number was decreased below 15, nevertheless the court, under the provisions contained in the above italicized portions of said section 7283 of the Code, would, in the event the number fell *below 18,* within its discretion, have the right to *increase* the number to 18.

Section 20 of the jury law (see pamp. Gen. & Loc. Acts, supra, p. 314) provides, among other things, as follows: "In the event the juries, either grand or petit, after being completed should be reduced from any cause below the number required by law, the court shall, in the manner provided in this act supply all deficiencies in the number of any such jury in the court." This provision relates solely to the manner in which, in case a grand jury falls below the legal number, *15,* the deficiency in the grand jury *shall* be supplied. It does *not preclude* the court, if the number falls below 18, from supplying the deficiency in the manner prescribed by the act.

Section 21 of said jury law (pamp. Gen. & Loc. Acts, supra, p. 314) provides, among other things, that "whenever any judge of a court, or of a division of a court, needing jurors, grand or petit, requires it, he shall procure the jury box and the key thereto and shall, as soon as he has drawn therefrom the jurors required at that time have the key and box delivered to any other judge," etc. This quoted provision of the jury law, in

our opinion, provides an ample method for securing the presence of any number of qualified persons which the judge of a court *may lawfully* add to any grand jury. It is therefore our opinion that while, under the *letter* of the law, the court below was not, in the instant case, *required* to add new members to the grand jury *before* that grand jury was reduced below 15, nevertheless that, under said section 7283 of the Code as it now exists, the court had a right, in its discretion, when that grand jury fell below 18, to increase it to 18, and that our new jury law provided ample machinery for supplying the deficiency.

Taking into consideration the history of sections 7282 and 7283 of the Code, and the unbroken line of decisions which definitely fixed their meaning before the addition of the new words to section 7283 of the Code, taking into consideration the history of our new jury law, in the light of which these sections must now be read, taking into consideration the evident purpose of our legislators in framing our new jury law to so hedge the selection of our juries, both grand and petit, as to prevent the possibility of fraud or partiality in their selection and impanelment, and, at the same time, the equally evident purpose of the Legislature that the act should be liberally construed in favor of the validity of juries, grand and petit, organized in compliance with the forms provided by the act, taking into consideration the fact that, as was pointed out in *Patterson's Case, supra,* the grand jury, under the terms of the new jury law, for the ordinary court having juries, must be organized with 18 jurors, we are constrained to hold that the purpose of the Legislature in adding the new words to the statute is clear, and that the legislative purpose in adding the new words will be defeated unless the statute is held to be as we have above construed it. This is made

plain by section 18 of the new jury law, to which we have above referred. It is only in *exceptional* instances, pointed out in the *Patterson Case,* that a grand jury can lawfully be organized with less than 18 persons. The grand jury is one of the most important bodies which exercises functions in the state. When the Legislature passed the new jury law that body so hedged the selection of jurors, grand and petit, that neither a presiding judge nor any other officer can tell, until the name of the juror is drawn from the box, who the person is to be, with whom a deficiency in a jury, grand or petit, is to be supplied. Having thus, by legislative enactment, removed, as far as human experience could indicate, the possibility of fraud, imposition, or partiality in the selection of jurors, it was not unreasonable that in section 29 of the act the Legislature should have indicated to the courts that it was the purpose of the Legislature that the act should receive that construction at the hands of the courts which would carry into effect the purposes of the Legislature in passing the act. So long as the selection of tales jurors remained in the discretion of some court official, the opportunities for fraud or partiality in their selection were great. During that period it was appropriate that the Legislature and the courts should, to protect the liberty and property of the citizens—to save, indeed, in its purity and in its independence the right of trial by jury from either legislative or judicial encroachment—require a strict construction of the laws respecting the organization, or, if organized, the completion, of both grand and petit juries. Having, however, so far as human foresight can provide, eliminated the opportunities for fraud, partiality, or oppression in the organization of our grand and petit juries, the Legislature, in order that *justice* may be administered in our courts "without sale,

denial, or delay," has declared that the present jury law shall not receive an illiberal interpretation at the hands of the courts, and it is the duty of the courts to obey the legislative will.

4. Under our laws as it now exists, a grand jury *must,* at all times, be composed of not less than 15 persons, and it *may* exist with 16, 17, or 18, persons. The court may, *in its discretion,* keep it at 18, but if it does not, so long as the stated number, 15, is present, it is a legal grand jury.—*Patterson v. State, supra.*

There is not a word in said case of *Patterson v. State, supra,* from which a contrary holding can be inferred. The opinions of the Court of Appeals in *Yeager v. State,* 8 Ala. App. 374, 62 South. 318, and in *Hafley v. State,* 8 Ala. App. 378, 62 South. 319, are, however, not in accordance with the above views. The Court of Appeals simply followed our former decisions, and we doubt if the italicized changes in section 7283 of the Code were called to the attention of that court.

5. In the above discussion we have not referred to sections 7304 and 7305 of our Code. Those sections refer only to the addition of temporary, and not to the addition of permanent, grand jurors.—*Osborn v. State,* 154 Ala. 44, 45 South. 666.

6. It follows, therefore, from what we have said above that in our opinion the grand jury which made the report which we have under consideration was a validly constituted grand jury, and that the judgment of the court below, refusing to grant the motion to expunge the report from the records of the court should be affirmed. And the petition for the writ of mandamus is accordingly denied.

Mandamus denied. All the Justices concur.