(80 South. 171)

MARSH et al. v. STATE. (4 Div. 548.)

(Court of Appeals of Alabama. May 28, 1918. On Rehearing, June 29, 1918.)

1. CRIMINAL LAW ⚖==622(1)—TRIAL—SEVERANCE.

In the absence of a motion for a severance by one of the defendants, who were jointly indicted, it is in the discretion of the trial court to proceed with the trial jointly or severally.

2. JURY ⚖==79(3)—SELECTION OF JURY.

A defendant cannot complain that he is required to select a jury for his trial from the names on the venire other than the 12 jurors that were engaged in their deliberation on another case at the same time.

3. WITNESSES ⚖==347—CREDIBILITY—FAILURE TO MAKE COMPLAINT.

Where prosecuting witness testified that he recognized defendants as those who set fire to his house, and that defendants shot at him, it was proper on cross-examination to bring out that prosecuting witness made no complaint against defendant until two weeks later; this tending to discredit his testimony, since at common law one who has been robbed or knows that a felony has been committed is not only authorized to levy hue and cry, but bound to do it under pain of fine and imprisonment.

4. WITNESSES ⚖==282—CROSS-EXAMINATION—LEADING QUESTIONS.

The purpose of cross-examination being to sift the testimony, leading questions are permissible, but it is not permissible to ask misleading or loaded questions calculated to intrap the witness into a statement which he never intended to make, etc.

5. ARSON ⚖==32—EVIDENCE—THREATS—ADMISSIBILITY.

In a prosecution for arson, evidence that defendants had made threats against the son of the prosecuting witness, who lived in the house destroyed part of the time, held admissible to show motive.

On Rehearing.

6. WITNESSES ⚖==281—CROSS-EXAMINATION.

While it would not constitute reversible error for the court to permit on cross-examination questions otherwise proper which assumed facts of which there was no evidence, etc., the exclusion of such questions was not erroneous.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Sid Marsh and Rushing Marsh were convicted of arson, and they appeal. Affirmed.

R. H. Arrington, of Montgomery, for appellants.
F. Loyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., for the State.

BROWN, P. J. [1] In the absence of a motion for a severance by one of the defend-

---

⚖==For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ants, it was within the discretion of the trial court to proceed with the trial of the defendants jointly or severally. Wilkins v. State, 112 Ala. 55, 21 South. 56; Felder v. State, 9 Ala. App. 48, 64 South. 162; Code 1907, sec. 7842.

[2] There is no merit in the defendant's objection that he was required to select a jury for his trial from the names on the venire other than the 12 jurors that were engaged in their deliberations in another case at the time. Trammell v. State, 1 Ala. App. 83, 55 South. 431; Talley v. State, 174 Ala. 101, 57 South. 445; Patterson v. State, 171 Ala. 2, 54 South. 696.

[3] The defendants were convicted of arson. The building burned was the residence of the state's witness Mink Lee. The litigated fact in the case is whether or not the defendants were responsible for originating the fire. The defendants offered evidence tending to show an alibi, while the evidence offered by the state tended to show that the defendants set fire to and burned the house, and at the time Lee's wife and two small children were in the house, having retired for the night; that they were compelled to leave the building in their nightclothes. The building and its contents, consisting of all the worldly goods possessed by Lee, were destroyed. Lee was examined as a witness, and testified that he had been away from home during the day, and on returning discovered some one shooting into his house; that the parties also shot at him, and soon thereafter the house burst into flames and was totally destroyed, with its contents. He stated on his examination in chief, among other things, that he saw and recognized the defendant Sid Marsh by a flash of light, and that he heard and recognized the voice of the other defendant, Rushing Marsh. We quote from his testimony:

"I was at Mr. Boyd's at the second shooting, and when that shooting hushed and stopped I started towards my house. I went up the dirt road. I was about 30 feet of the house. Then I heard somebody talking low, and I stopped to listen where they were at, and another pistol shot. It shot right towards my house. The person was something like ten steps from my house, standing in the road. I shot at him. My son, Jack, was standing there by me. I shot at them and they shot three times at me. I then went back to Mr. Boyd's. They were still down there around the house. One of them was in the house. I saw him as he came out of the house. I knew who he was. It was Sid Marsh, one of the defendants. I could tell who it was, because they had broken bottles or some glass. I heard something spatter in there. When they threw the lights on it, it threw a flash, and he stepped out. I heard Rushing Marsh. I heard him curse and say, 'Come out of there; I hear the train coming.' I did not hear Sid say anything. I saw a dim light in the house when we were swapping the loads."

Mrs. Lee was also examined, and testified, among other things:

"I know Sid and Rushing Marsh. Just before the house caught afire, guns were fired into the dwelling house. There were more than a half dozen guns. They shot them at all the windows from different parts of the house. Sid Marsh came to the house. He said, 'G—— d—— you, if you don't want to get burned up get up and get out of there.' I was under the bedstead. My two children were with me. I got up and got out, leaving Marsh in the house. I saw Sid Marsh strike a match to a quilt. The quilt was hanging in the window."

On cross-examination of the witness Mink Lee the defendants' counsel propounded to him the following questions:

"You didn't swear out a warrant in this case for about two weeks after that, did you?" and "You didn't swear out a warrant in this case until Mr. Simmons came to see you, did you?"

On objection of the solicitor, the court declined to allow these questions to be answered, and on first consideration of the case it was urged by the Attorney General that this ruling was proper, for the reason that the testimony elicited by these questions was clearly irrelevant. On consideration of this objection, we held that it was permissible, on cross-examination, in view of the character of the crime alleged to have been committed and the circumstances thereof detailed by the witnesses, and especially in view of the fact that Lee testified that he recognized the defendants at the time of the commission of the offense, for the defendant to show delay in the commencement of the prosecution, as a circumstance affecting his credibility. This holding is not only sustained by our own case of Brooks v. State, 8 Ala. App. 286, 62 South. 569; s. c. 185 Ala. 1, 64 South. 295, but is sustained by the weight of authority. We take the following from Wigmore on Evidence:

"In general, a delay in instituting a prosecution, or reluctance overcome only by others, is some indication, perhaps only a slight one, in fact, of a consciousness of the weakness of one's case. So also is the failure to sue or prosecute in the jurisdiction or court which would naturally be sought. These are but a few indications of a great variety of the party's conduct which may be and constantly is inquired into as affecting his belief in the merits of his cause. Like all similar circumstances, it is, of course, open to explanation." Wigmore on Evidence, § 284.

This principle is applied with respect to the failure of the injured party to complain in cases of rape (Rogers v. People, 34 Mich. 345), and also in the failure to lodge immediately information of a robbery or larceny, in Wigmore on Evidence, § 1242. We find no reason why the same principle is not applicable to the crime of arson.

The contention that the party injured was under no duty to make complaint or to com-

mence prosecution, and therefore his failure to do so is immaterial, cannot be sustained.

"As to hue and cry, at common law, it seems to be clearly agreed that a private person who hath been robbed or who knows that a felony hath been committed, is not only authorized to levy hue and cry, but is also bound to do it, under pain of fine and imprisonment." Jacobs' Law Dictionary; Hale's Pleas of the Crown, 98; Black's Law Dictionary, p. 583; 4 Blackstone's Com. 293.

Moreover, in the absence of some good reason, it would be natural for one so seriously injured by such a heinous offense, where he recognized and knew the identity of the criminal, to make immediate complaint to the authorities, and his failure to do so has some tendency to discredit his testimony that he recognized the defendant in the act of destroying his property and endangering the lives of his wife and children. Jones on Ev. § 829.

[4] The purpose of cross-examination being to sift the testimony of the witness given on his direct examination and develop facts tending to discredit it, the form of the question is rarely objectionable; hence it is permissible for the cross-examiner to resort to leading questions. Bullock v. Wilson, 5 Port. 338; Wigmore on Ev. §§ 773–915. While this is true, it is not permissible, even on cross-examination, to ask misleading or "loaded" questions, such as are calculated to intrap the witness into a statement which he never intended to make, and questions which assume the existence of a fact of which there is no evidence have been repeatedly condemned. Jones on Ev. § 843; Wigmore on Ev. § 780. The questions to which the objections were sustained were of this character, and the court will not be put in error for sustaining the objections.

[5] There was some evidence in this case showing that Jack Lee lived part of the time at the home of his father, Mink Lee, whose house was destroyed, and for the purpose of showing motive for the crime, it was permissible to show threats made by the defendant against Jack Lee. Overstreet v. State, 46 Ala. 30; Jones v. State, 13 Ala. App. 10, 68 South. 690.

This disposes of all the questions presented by this appeal adversely to the appellant, and the judgment heretofore rendered by this court is set aside, and a judgment entered affirming the judgment of the trial court.

Affirmed.

On Rehearing.

[6] While it would not constitute reversible error for the trial court to permit questions of the character here involved, although they technically violate the rule against allowing questions that assume facts of which there is no evidence (Gilliland v. Dunn & Co., 136 Ala. 327, 34 South. 25), the court does not commit error in upholding the rule by sustaining an appropriate objection to such question.

We did not overlook the fact that the state's witness Mrs. Lee was also impeached, but we do not see the pertinency of the fact to the question presented for review.

Application overruled.