WILLIE ALLS, *Plaintiff in Error,* vs. STATE OF FLORIDA, *Defendant in Error.*

139 So. 789.

En Banc.

Opinion filed February 27, 1932.

*Patterson & Knight* and *W. Clinton Green,* for Plaintiff in Error;

*Cary D. Landis,* Atty. Gen., and *Roy Campbell,* Assistant, for Defendant in Error.

BUFORD, C.J.,—In this case plaintiff in error was indicted on a charge of murder in the first degree and was convicted of manslaughter and thereupon adjudged to be guilty and sentenced to serve a period of 20 years in the State prison. The deceased was a woman with whom the accused had been living for about three months prior to the homicide.

The version of the accused was in effect that the deceased met her death by the accidental discharge of a pistol while she was attempting to take the same away from the accused with the avowed intent of shooting him with it. The theory of the State was that a quarrel arose between the parties on the night before the homicide occurred (it appears that the homicide occurred sometime about 9 or 10 o'clock in the forenoon) ; that the accused was in ill humor and had rather recklessly fired his pistol twice about the house during the morning on which the homicide occurred; that when the homicide occurred he had just returned to the house where he and the deceased lived and finding the front door locked he went to the back door of the house, entered the room where the woman was lying on a bed and immediately shot and killed her. There was substantial evidence to sustain this theory but the evidence is conflicting and nobody except the accused and the deceased were actually present or could see all that transpired within the room.

The explanation of the homicide given by the accused was neither unreasonable nor improbable, though it was necessarily untrue, if the statements made by certain witnesses for the State were true.

Under this state of facts the credibility of witnesses and the probability of the truth of the different stories which they detailed to the jury became of most vital importance. During the progress of the trial a reputable

physician was on the stand as a witness in behalf of the State and the following proceedings occurred:

"Q. Doctor, put your hand on that gun—let your trigger finger on the trigger?

A. (Complying)—Yes, sir.

Q. And demonstrate to the jury, by pointing that gun right over the nose, to the center of the forehead.

A. (Doctor illustrating position with gun as requested).

Q. Has your arm ever been broken?

A. No, sir.

Q. Is it normal?

A. Yes, sir.

Q. Doctor, if your arm were shorter than that, would that affect it any more than otherwise—would that affect the angle at which the gun would point?

A. Not that, but the turning of the head would affect it. If my arm were shorter, it would bring it closer to my head.

Q. With this gun that you have in your hand, and with your knowledge of the length of the arm of the body that you saw, you have examined, how far would you say that gun being in the hand of that woman, pointing in the direction of the center of her forehead—how far would you estimate the front of that barrel to be away?

MR. KNIGHT: Just a moment. Your Honor, we object upon the ground, it assumes a position, as to what the position of the gun was at that time; it was assumed to be in the hands of the woman, and has not been proven.

THE COURT: Objection overruled.

(To which said ruling, the defendant then and there duly excepted).

A. This gun in my hand, pointing directly toward my head, in straight, (Illustrating) is eight inches—I wear a 35½ or 36 shirt sleeve, inch and a half, or two inches, longer than the average arm, and that puts that gun about eight inches from my head.

Q. Would it, or would it not, be possible or difficult for a person of medium size, with normal arms

and hands, to fire a shot from that gun with the trigger finger on the trigger?

MR. KNIGHT: Just a moment, we object—.

Q.—to penetrate the brain from the forecenter of the forehead to the back center of the forehead?

MR. KNIGHT: Just a moment, we object, if your Honor please, first, upon the ground that the witness has not been qualified to testify as to hypothetical questions on the subject to which the gun refers; upon the ground, secondly, it seeks to establish a position and relationship of the instrument as of the present time, that has not been established.

THE COURT: Objection overruled.

(To which ruling, the defendant then and there duly excepted).

A. It could be done, my belief is, but quite difficult with the forefinger.''

No evidence had been introduced to the effect that the pistol when fired was in the hand of the deceased or that it was fired by the pressure of the trigger finger of the deceased. The question assumed a condition which no one had claimed existed. Aside from this, the questions elicited from the witness testimony which could only be the reflection of his opinion concerning matters about which he could not testify as a medical expert.

The rule as to the admissibility of such evidence as this is clearly stated in an opinion of this Court by Mr. Chief Justice Maxwell in the case of Mann vs. State, 23 Fla. 610, 3 Sou. 207. In the Mann case it appears that facts had been presented to the jury upon which the hypothetical question could be based and even then the evidence sought to be elicited by way of opinion of the witness was held to be improper, but in this case the facts are not shown to exist upon which the hypothetical question was based and, therefore, its admission was doubly charged with error.

The record further shows that the prosecuting attorney during the argument of the case made some demonstra-

tion of the pistol in line with this above quoted evidence and that he then passed the pistol to a member of the jury, requesting the juror to hold the pistol in a certain manner and see whether or not a wound could be inflicted in another certain manner. This was objected to and the objection overruled. There was no evidence upon which to base the assumption that the pistol was held in the manner indicated by the prosecuting attorney or in the manner in which he directed the juror to hold the pistol to make the demonstration or experiment. If there had been evidence upon the part of the defense to show that the pistol was held in the manner indicated by the prosecuting attorney and in the manner in which he directed the juror to hold the pistol, this performance might have been by way of legitimate argument going to the credibility of the witness who had testified to such a state of facts. But no argument is good unless it finds foundation in the evidence of facts reasonably to be inferred from the evidence. Here the prosecuting attorney was allowed to argue to the jury in effect that the defendant's testimony was false because a fact to which he had not testified could not be true and as this argument was calculated to impeach the credibility of the defendant as a witness in his own behalf, it was improper and the objection thereto should have been sustained and the jury directed not to consider the same in their deliberations to determine the guilt or innocence of the defendant.

For the reasons stated, the judgment should be reversed for a new trial and it is so ordered.

Reversed.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., dissents.